## Adoniram Dann v. Charlotte Cudney.

*Estoppel in pais.* — Where the husband of a woman sold a horse belonging to her, without her authority, and she was informed of the sale before payment had been made, and afterwards had ample opportunity to inform the purchaser of her rights, but neglected to do so until after he had made payment to the husband, it was *held*, that she was estopped from thereafter asserting title to the horse against a mortgagee of the purchaser.

*Cross-Examination.* — A woman having brought trover against the mortgagee of property which had been sold by her husband, and subsequently mortgaged by the purchaser to the defendant, testified that the horse was her property, that she had never sold it, nor authorized its sale, and that if she had her rights it would still be in her possession; — Held, That upon cross-examination it was proper for defendant to go fully into the question of her neglect to give the purchaser notice of her rights.

Where the charge of the Court, as shown by the record, would have a tendency to mislead the jury, but the record does not purport to give the whole charge, this Court cannot pronounce it erroneous.

*Heard April 27. Decided May 2.*

DANN *v.* CUDNEY.

Error to Saginaw Circuit.

The action was trover for the conversion of a horse. Plea, the general issue with notice of special matter.

The facts sufficiently appear in, the opinion.

*John B. Dillingham*, for plaintiff in error:

It must be inferred in this cause from the relations existing between the defendant in error, and Alfred Cudney — who sold the horse in controversy — they being married to each other, that in such sale he was acting as her agent in making the same, and the evidence given in the Court below tends to show that such agency did exist. — 2 *Kent's Com.*, 827, 828, *9th ed.; Story on Agency*, §255; 2 *Greenleaf's Ev.*, §67.

The defendant in error having full knowledge of the sale by her husband of this horse to John Sevenoakes, and suffering the horse to remain in possession of the vendee until he had fully paid for the same to her husband; she is now estopped from asserting her claim to the horse. — *Story on Agency*, §127, §128, *and note 1, and the cases above cited.*

As to what is proper cross-examination, see — *People v. Horton*, 4 *Mich. R.*, 82; *Campau v. Dewey*, 9 *Mich. R.*, 382.

Declarations, to become part of the *res gestæ* and to be admitted in evidence on the trial, must have been made at the time the act was done, which they are supposed to characterize. — 1 *Greenleaf's Ev.*, §108, *and note*, 2; *Carter v. Buchannon*, 3 *Kelly R.*, 513; *Blood v. Rideout*, 13 *Met.*, 237; *Boyden v. Burke*, 14 *How.*, 575.

*H. Joslin*, for defendant in error:

The rule is well settled, that a witness cannot be cross examined except as to facts and circumstances stated in the direct examination. — 1 *Greenleaf's Ev.*, §433; 14 *Peters*, 446; *Cowen & Hill's Notes*, p. 731.

DANN *v.* CUDNEY.

The question asked of Charlotte Cudney was immaterial.

There was no evidence given on the direct examination of her previous *knowledge* of the sale, or *the material facts thereof*—no foundation for proving *in any manner* the plaintiff's subsequent ratification of the sale; hence the answer to the question could not *tend* to prove a ratification.—2 *Greenleaf's Evidence*, §66; *Owings v. Hull*, 9 *Pet.*, 607; *Bell v. Cunningham*, 8 *Pet.*, 81; *Courteen v. Touse*, 1 *Campbell*, 43, *note.*

There is no error in a charge which, though not strictly accurate, could not have misled the jury.—*People v. Scott*, 6 *Mich.*, 287.

CHRISTIANCY J.:

This was an action of trover brought by defendant in error, who was a married woman, for the wrongful conversion of a horse. She had allowed her husband to use the horse, and he had driven him, with his own, from Canada to East Saginaw, about the 1st of November, 1862, where, within two days after, he sold this and the other horse to one John Sevenoakes, who, on the twelfth day of the same month, executed a chattel mortgage of the horse to Dann, the defendant below, under which Dann subsequently, (but how soon does not appear,) took possession, which is the conversion complained of.

The wife had never given her husband any previous authority to sell the horse; but being with her husband at East Saginaw, they both went, the next morning after the sale, to the house of Sevenoakes, and took breakfast; and while on the way to the house for that purpose, the husband, she says, told her he had sold the horse to Sevenoakes. She was then asked by the defendant whether, at any time between that morning and the time when the horse was taken on the chattel mortgage, she informed

Sevenoakes that the horse was her property, and that her husband had no right to sell him.

This question was objected to on the part of the plaintiff, and excluded by the Court. The testimony already given by her tended strongly to show that she had a good opportunity to have given this notice to Sevenoakes the next morning after the sale, and her subsequent testimony, as well as that of Sevenoakes, tended also to show that this opportunity continued for weeks afterwards, and there was no evidence of a contrary tendency. Her own testimony also shows — and there seems to have been no dispute about the fact — that she also knew that Sevenoakes had not yet paid for the horse at the time when she was informed of the sale. Had she been informed not only of the sale of the horse, but that he had been paid for, she might not, perhaps, have been bound to any diligence in making known her rights; as her silence might not then lead the purchaser into any further act to his prejudice; but, knowing that the husband had assumed to sell the horse as his own, under circumstances not calculated to excite any suspicion of his right, and that payment had not yet been made, she must also have known that her silence would still leave the purchaser under the belief that the horse belonged to the husband, and that he was at liberty to pay the husband, or deal with him as the owner. She could not, then, honestly neglect any fair or convenient opportunity to give early notice of her right, and of her husband's want of authority, unless she intended to be bound by any payment which might be made to her husband, or any other arrangement the purchaser might make with him in the meantime. She must have known that payment to the husband would be the natural result of her neglect to give the notice. And if, under such circumstances, she, having a good opportunity to give the notice, yet refrained from giving it until payment had been made to

the husband, or the purchaser had parted with property on the faith of the husband's right, she should be bound by the acts of her husband, and suffer the consequences of the error into which her neglect had led the purchaser ; and to allow her to recover the price again, after the purchaser had thus paid for it, would be to aid her in the commission of a gross fraud.   Under such circumstances, upon every principle of justice, she would be as much estopped as if she had stood by at the sale without objection, and permitted the husband to sell the horse as his own.

The defendant, therefore, had a right to show that he had thus been led into paying the husband for the horse, or parting with property on the faith of the husband's right, in consequence of her negligence in giving notice of her rights when she had a fair opportunity to do so, and when she knew that payment had not been made.   He had, therefore, the right to go fully into the question of delay in giving the notice, her opportunities for giving it, her knowledge that payment had not been made, and the fact of his paying or parting with property on the faith of the husband's right ; and being on cross-examination, it was entirely immaterial which of these facts he should show first.   The question proposed was entirely legitimate on cross-examination, as she had testified in chief that she had never sold the horse, nor authorized the husband to sell him, and that, if she had her rights, the horse would still have been in her possession.   The Court, therefore, erred in overruling the question.

It is clear, from the subsequent testimony in the cause, that this error was calculated materially to prejudice the defence ; as it appeared from the testimony of Sevenoakes, which was confirmed by that of the husband, and which was not disputed, that during the time to which the question referred — that is, between the

morning when she was informed of the sale and the time when the horse was taken on the chattel mortgage — Sevenoakes did actually pay the husband for the horse through another trade, which was made between them about the twentieth day of November, and the note the husband had taken for the horse was given up.

As the record does not purport to give the whole charge, we cannot say it was erroneous. The charge, as a whole, may have been in accordance with the principles above laid down. But if the whole charge is stated in the record, it was inapplicable to the case, and calculated to mislead the jury. The jury should have been directly told that, if they should find that the plaintiff, having notice of the sale, and that payment was still to be made, neglected to give notice of her rights when she had convenient opportunity to do so, she took upon herself the risk of payment being made to the husband in the meantime; and if they should find that the purchaser had, in good faith, continued to deal with the husband as the only party in interest, and had paid him for the horse, she would be bound by the acts of her husband as if they had been done by herself.

The judgment must be reversed, with costs, and a new trial granted.

COOLEY J. concurred.

MARTIN Ch. J. did not sit in this case.

CAMPBELL J., *dissenting :*

I do not agree with my brethren that there was any error in sustaining the objection to the question asked of Mrs. Cudney, on cross-examination, concerning her informing Sevenoakes of her claims. It can hardly be seriously claimed that the silence of the real owner, whose property has been sold by another without her knowledge, can usually, in any way, affect her right to disregard such tortious

action. A purchaser cannot protect himself against the real owner, if the latter has not misled him, in making or completing the purchase or payment, by conduct which was inconsistent with the honest incidents of ownership. In the case before us, at the time when Mrs. Cudney was asked the question rejected, it only appeared that her horse had been taken from her possession, without her authority or consent, by defendant and John Sevenoakes, defendant claiming under an asserted chattel mortgage, but it not appearing from whom; that her husband had sold the horse without authority, at a time when they were on a visit to East Saginaw, where he had driven the horse, in a team, from Canada; and that, on the day after the sale, her husband told her of it as they were going to breakfast at the house of Sevenoakes. There was nothing in the case at that time which tended to show that she had reason to believe the horse was not fully paid for, nor was there any testimony at that time tending to show that Sevenoakes or defendant did any act, subsequent to her ascertaining about the sale, which they would not have done had they known of her claim. When, therefore, the Court refused to allow her to be asked whether she informed Sevenoakes of her claim, there was nothing to show that such information could have been in any way material. The propriety of its rejection cannot be affected by the subsequent introduction of evidence for the defendant, which might have made it pertinent. It could only be made pertinent by facts relating strictly to the defendant's case, which, as an estoppel, was, in its nature, one of avoidance; and although the Court might, perhaps, have allowed this case to be opened on a cross-examination of the plaintiff's witnesses, yet it is not usual for this to be done until there is something to connect it with, and it is certainly no error in the Court to refuse it. I think the testimony was immaterial when offered, and that, had the question

been answered in such a way as to show plaintiff had not informed Sevenoakes, the answer would not have affected her claims as they then appeared. It is evident that the Court below took this view of the matter; for when the defence was opened, and facts were introduced which might be claimed to form a foundation for an estoppel against her, the Court admitted evidence that she had not informed Sevenoakes of her rights, and the facts went on this point to the jury. I do not deem it necessary to comment on the weight of the facts proved, as their consideration does not belong to any tribunal but the jury; and there is no reason to suppose, from the record, that the jury were not properly instructed on the subject. There is no exception based upon any such ground, and the Court below must be presumed to have given them all needful cautions. The charges given were correct so far as they appear, and the charge refused was rightly refused.

While I fully agree that circumstances may exist when silence is not consistent with the duty of an *owner* of property, yet I think that such silence can never be material until it appears, at least, that some step has been taken which may have been had in reliance upon it, and this did not appear until after this question had been asked and rejected.

I think the judgment should be affirmed.