THE NEW YORK IRON MINE v. THE FIRST NATIONAL BANK
OF NEGAUNEE.

*Agent cannot make promissory note for corporation without authority—Notes made by the agent payable to himself—Partnership liability cannot be shown under a declaration upon notes in a corporate name—Cross-examination.*

A general agent, without being specially empowered so to do, has no authority to make promissory notes in the name of his principal.

A Michigan mine belonged to a corporation whose financial office was in New York.    The general agent in Michigan was accustomed to indorse the company's paper for collection or discount, and to draw on the treasurer in New York for the current needs of the corporation, and his drafts were duly paid.    *Held that*

this could not imply authority in the agent to make promissory notes in the name of the corporation.

A general agent in Michigan and a financial officer in New York were the only stockholders having beneficial interests in their corporation. The agent made promissory notes in the corporate name. In a suit to collect them the holder claimed that the corporation had had no meetings for several years; that the agent in Michigan had managed the business exclusively there, and that·he and the officer in New York, who acted as president and treasurer, had conducted affairs as if they were partners, and ought therefore to be held as having fully authorized each other to exercise all powers that partners might exercise. *Held* that as it did not appear that plaintiff was influenced by the neglect to observe the formalities of a corporation, and as there was no pretense that he had dealt with them as partners, but the notes declared on purported to be corporation notes, the facts stated were immaterial, and plaintiff must make out a case on grounds which would establish a corporate, not a partnership, liability.

Where an agent makes negotiable paper in the name of his principal, payable to himself, the fact that thus on the face of the paper, he appears to be acting in two capacities, one of which may be antagonistic to the other, imposes upon the party taking the paper the obligation of special care in inquiring into its authority.

It is competent for a corporation to show, in making defense to paper issued in its name but alleged to be unauthorized, that immediately on its existence becoming known, its validity was formally repudiated.

The mere act of conferring an authority that may be properly delegated does not constitute such negligence as to make one innocent party who confers such power responsible for a loss caused to another by the agent's dishonesty; nor can he be responsible if the other party has been negligent.

In an action on promissory notes made by an agent, the principal question related to the agent's authority, but the plaintiff, who called him as a witness, did not examine him as to his signature to the notes and did not introduce the notes until after he was examined. *Held* proper, notwithstanding, so to cross-examine him as to bring out the whole truth.

The defense cannot be compelled to give credit to plaintiff's witness as its own in order to obtain the explanation of facts constituting plaintiff's case, where the plaintiff has omitted part of them in examining him; but is entitled to cross-examine him as to all the facts where the whole transaction is at issue.

It is proper on cross-examination of a party to ask whether he had not admitted fraud in the transaction at issue, as the question bears directly upon the trustworthiness of his evidence.

Error to Marquette.    Submitted October 18 and 22. Decided November 21.

ASSUMPSIT.   Defendant brings error.

*W. P. Healy* and *G. V. N. Lothrop* for plaintiff in error.   An agent's power to make drafts does not include authority to issue notes, *Tripp v. Swanzey Mfg. Co.*, 13 Pick., 293; *Dickinson v. Valpy*, 21 E. C. L., 41; *Wood v. Goodridge*, 6 Cush., 123; *Rossiter v. Rossiter*, 8 Wend., 494; *Robinson v. Yarrow*, 7 Taunt., 455; *Attwood v. Munnings*, 7 B. & C., 278; *Prescott v. Flinn*, 9 Bing., 19; *Stainback v. Read*, 11 Gratt., 281; *Nichols v. State Bank*, 3 Yerg., 107; 1 Pars. N. & B., 107 (2d ed.); *Wallace v. Branch Bank*, 1 Ala., 565; *Union Bank v. Mott*, 39 Barb., 180; *Mechanic's Bank v. Schaumburg*, 38 Mo., 236; *Batty v. Carswell*, 2 Johns., 48; *North River Bank v. Aymer*, 3 Hill, 262; *Floyd's Acceptances*, 7 Wall, 666; a mining superintendent or agent has no power by virtue of his office to borrow money or execute notes on behalf of the corporation, *Union Gold Mining Co. v. Rocky Mountain National Bank*, 1 Col., 531: 2 Col., 570; *In re German Mining Co.*, 19 E. L. & E., 599; *Hawtayne v. Bourne*, 7 M. & W., 595; *Carpenter v. Biggs*, 46 Cal., 91; *Lawrence v. Gebhard*, 41 Barb., 575; *Sewanee Mining Co. v. McCall*, 3 Head, 619; *Benedict v. Lansing*, 5 Den., 283; *Silliman v. F. O. & C. R. R.*, 27 Gratt., 120; a general power of attorney to conduct a man's business does not authorize the issue of negotiable paper in the principal's name, *Murray v. E. Ind. Co.*, 5 B. & Ald., 204; *Esdaile v. LaNauze*, 1 Y. & C., Exch., 394; *Hogg v. Snaith*, 1 Taunt., 347; *Kilgour v. Finlyson*, 1 H. Bl., 155; *Gardner v. Baillie*, 6 T. R., 541; *Emerson v. Prov. Hat Co.*, 12 Mass., 237; for Michigan decisions as to the powers of agents of corporations to bind their principals, *Hammond v. Mich. State Bank*, Walk. Ch., 214; *Grover & Baker S. M. Co. v. Polhemus*, 34 Mich., 249; *Reynolds v. Cont. Ins. Co.*, 36 Mich., 131; *Lyell v. Sanbourn*, 2 Mich., 109; *M., H. & O. R. R. Co. v. Taft*, 28

Mich., 289; *Kal. Nov. Mfg. Co. v. McAlister,* 36 Mich., 327; an agent cannot deal with himself, *Claflin v. F. & C. Bank,* 25 N. Y., 293; *Clute v. Barron;* 2 Mich., 192; *Ames v. Pt. Huron Booming Co.,* 11 Mich., 144; *F. & P. M. Ry. v. Dewey,* 14 Mich., 487; paper made by one purporting to act as agent, in his principal's name, to his own order, carries with it notice that it is for his own use, *West St. Louis Sav. Bank v. Shawnee County Bank,* 95 U. S., 558; wide latitude should be allowed in cross-examining a party charged with fraud in the transaction at issue, *Jacobson v. Metzger,* 35 Mich., 103.

*Ball & Owen* and *Ashley Pond* for defendant in error. A mining corporation must have power to contract debts and give notes to pay them, 1 Pars. N. & B., 164; Ang. & Am. Corporations, § 271; Green's Brice's Ultra Vires, 115-122; Edwards on Bills, 77-8; *Rockwell v. Elkhorn Bank,* 13 Wis., 653; *Lucas v. Pitney,* 27 N. J. Law, 221; and to endorse notes, *Olcott v. Tioga R. R.,* 40 Barb., 179; and it can authorize its agent to exercise these powers, *Melledge v. Bost. Iron Co.,* 5 Cush., 158; *White v. Westport Cotton Mfg Co.,* 1 Pick., 219; *Odiorne v. Maxcy,* 13 Mass., 178; *Kelly v. Fall Brook Coal Co.,* 4 Hun, 261; *Sedgwick v. Lewis,* 70 Penn. St., 217; *Pahlman v. Taylor,* 75 Ill., 629; *Ketchum v. Buffalo,* 14 N. Y., 375; a corporation is bound by the acts of its agent, within the scope of his apparent authority, in the use of powers which he has assumed to exercise for a long time without interference, *N. Y. & N. H. R. R. Co. v. Schuyler,* 34 N. Y., 57; *Bank v. Putnam,* 3 Keyes, 343; *Davenport v. Peoria F. & M. Ins. Co.,* 17 Ia., 279; and if the corporation, by reasonable diligence, might have known of the unauthorized action, it will be held to have assented to it, *Beers v. Phœnix Glass Co.,* 14 Barb., 358; where the agent has power to borrow money and to give the note of the corporation for it, the latter is bound by the note in the hands of a *bona fide* holder even though it was issued for a purpose outside of the legitimate business of the corporation, *Bird v. Daggett,* 97 Mass., 494;

*Monument Nat. Bank v. Globe Works*, 101 Mass., 57; *Mechanic's Banking Ass'n v. White Lead Co.*, 35 N. Y., 505; *Bridgeport City Bank v. Empire Stone etc. Co.*, 30 Barb., 421; *Central Bank v. Empire Stone Co.*, 26 Barb., 23; *Lexington v. Butler*, 14 Wall, 282; the right to present for negotiation company paper, signed and endorsed by its agent and made payable to him, is a question of fact to be submitted with proper instructions, *Chemung Bank v. Bradner*, 44 N. Y., 680; *Trader's Bank v. Bradner*, 43 Barb., 379; *Rich v. Davis*, 6 Cal., 141; *Wait v. Thayer*, 118 Mass., 473; *Smith v. Lusher*, 5 Cow., 688; *Ihmsen v. Negley*, 25 Penn. St., 297; *Ridley v. Taylor*, 13 East, 175; *Haldeman v. Bank of Middletown*, 28 Penn. St., 440; *Phelan v. Moss*, 67 Penn. St., 59; *Moore v. Foote*, 34 Mich., 444; *Hamilton v. Vought*, 34 N. J. L., 187; *Moorehead v. Gilmore*, 77 Penn. St., 118; *Miller v. Consolidation Bank*, 48 Penn. St., 514; Lindley on Partnership, 265; 1 Pars. N. & B., 258. Cross-examination must be confined to matters bearing on the direct testimony of the witness, *D. & M. R. R. v. VanSteinburg*, 17 Mich., 110.

COOLEY, J. The plaintiff in error is sued as maker of three promissory notes and endorser of a fourth, all of which are copied in the margin.* By reference to these notes it will be seen that the name of plaintiff in error is subscribed or endorsed by W. L. Wetmore,

---

.* $5000.         MARQUETTE, Mich., April 26, 1877.

Sixty days after date we promise to pay to the order of Wetmore & Bro., five thousand dollars at Nat. Park Bank, New York, value received.

No.      Due June 25–28.         NEW YORK IRON MINE.
Endorsed, WETMORE & BRO.         By W. L. WETMORE.
            Protest fees 1.26.

$1000.         MARQUETTE, Mich., April 30, 1877.

Sixty days after date the Munising Iron Company promises to pay to the order of New York Iron Mine one thousand dollars at First National Bank, Negaunee, Mich., with exchange, value received.

E. P. WILLIAMS, *Secretary.*         W. L. WETMORE,
No. 332.   Due July 2, 1877.         *President.*
Endorsed, NEW YORK IRON MINE.
By W. L. WETMORE.
            Protest fees 1.50.

and the contest has been made over his authority to make use of the name of plaintiff in error as he has done. The New York Mine is a corporation, having its place of operations at Ishpeming in this State. It was organized some fourteen years ago, with Samuel J. Tilden and William L. Wetmore as corporators. Mr. Tilden has had the principal interest from the first, and has always acted as president and treasurer, keeping his office in New York city. Mr. Wetmore has always until this controversy arose acted as general agent with his office at Ishpeming. The board of direction has been made up of these gentlemen with some nominal holders of stock in New York city as associates. Meetings of the board appear to have been held very seldom, and the whole business of the company has been done by Mr. Wetmore and Mr. Tilden, the latter looking after the finances, and visiting Ishpeming only twice or three times during the whole period of the corporate existence. Mr. Wetmore hired and paid all the miners and other laborers, and transacted such other business as is usually taken charge of by a general agent whose principal is at a distance. As such agent he has paid out in all upwards of $3,000,000; the payments being generally made in drafts on Mr. Tilden, or in the proceeds of such drafts. For a while the drafts were on time, but latterly the financial condition of the corporation has been easy, and only sight drafts have been drawn. The firm of Wetmore & Bro. named in the three notes purport-

---

$5000.                          MARQUETTE, Mich., May 1, 1877.

Sixty days after date we promise to pay to the order of Wetmore & Bro., five thousand dollars at the Nat. Park Bank, New York, value received.

No.          Due July 3.                    NEW YORK IRON MINE.
Endorsed WETMORE & BRO.              By W. L. WETMORE.
                        Protest fees 1.26.

$5000.                          MARQUETTE, Mich., May 6, 1877.

Sixty days after date we promise to pay to the order of Wetmore & Bro., five thousand dollars, at the First Nat. Bank, Chicago, Ill., value received.

No.          Due July 5-8.                    NEW YORK IRON MINE.
Endorsed WETMORE & BRO.              By W. L. WETMORE.
                        Protest fees 2.59.

39 MICH.—82.

ing to be made by the New York Mine, was composed of William L. and F. P. Wetmore, and there was evidence that the New York Mine had had business transactions with that firm to the amount in all of $125,000. The Munising Iron Co. was a corporation of which W. L. Wetmore, as its note shows, was the president.

It was not claimed on the trial that there had ever been any corporate action expressly empowering Wetmore as general agent to make promissory notes, nor did it appear that he had ever executed any in its name except a few, as hereinafter stated. Some evidence was put in which it was claimed had a tendency to show the existence of a general custom in the mining region for the general agents of mining companies to make promissory notes in the names of their principals without special authorization, but as there was no showing that authority was not generally given, the attempt was a manifest failure. It was also insisted on the part of the plaintiff that as matter of law, the general agent of a mining corporation by virtue of his appointment as such had authority to bind it by commercial paper, and that the court must take notice of his authority, as they must of the authority of the cashier of a bank, the master of a vessel, or other known agents. *Adams Mining Co. v. Senter*, 26 Mich., 73, 76. On the other hand the defense contended that the authority to issue commercial paper was not implied in any general agency, and when conferred must be strictly construed, and in its exercise strictly limited to its exact terms; and that an authority to draw bills would not authorize the making of notes. And it was further contended that even if authority to make notes was implied, the particular notes in suit were presumptively not within the authority; three of them being drawn by Wetmore as agent, payable to the order of a partnership of which he was one of the members, and *prima facie* for the benefit of that partnership, while the other like these was made by Wetmore in one capacity and endorsed by him in another,

so that apparently he was dealing with himself in making and negotiating all of them.

It was not disputed by the defence that the corporation as such had power to make the notes in suit. The question was whether it had in any manner delegated that power to Wetmore. We cannot agree with the plaintiff that the mere appointment of general agent confers any such power. *White v. Westport Cotton Manf'g Co.*, 1 Pick., 215, is not an authority for that position, nor is any other case to which our attention has been invited. In *McCullough v. Moss*, 5 Denio, 567, the subject received careful attention, and it was held that the president and secretary of a mining company, without being authorized by the board of directors so to do, could not bind the corporation by a note made in its name. *Murray v. East India Co.*, 5 B. & Ald., 204; *Benedict v. Lansing*, 5 Denio, 283; and *The Floyd Acceptances*, 7 Wall., 666, are authorities in support of the same view. The plaintiff, then, cannot rest its case on the implied authority of the general agent; the issuing of promissory notes is not a power necessarily incident to the conduct of the business of mining, and it is so susceptible of abuse to the injury, and indeed to the utter destruction of a corporation, that it is wisely left by the law to be conferred or not as the prudence of the board of direction may determine.

But it was further insisted on the part of the plaintiff that though Wetmore may never have had the corporate authority to make notes in the corporate name, yet that the course of business was such, with the express or implied assent of Mr. Tilden, as to lead the public to suppose that his authority was ample, and that this course of business should be conclusive in favor of those who had taken the notes in good faith relying upon it. In support of this position evidence was given that Wetmore was in the practice of taking notes from the creditors of the corporation, and procuring them to be

discounted on his indorsement as general agent; and it appeared that the note of $1000 counted on in this case was made for a balance remaining unpaid on a much larger note made by the Munising Iron Co. payable to the order of defendant and discounted by the plaintiff. And on this part of the case we are of opinion that enough appeared to warrant the jury in finding that this practice of Wetmore to indorse the paper of the company for collection or discount was known to Mr. Tilden and not objected to by him; that parties taking such paper had a right to believe the indorsement was authorized, and that it was made in the interest of defendant, and not in fraud of its rights.

It was also shown that within the three or four years preceding the commencement of this suit Wetmore had made a few notes in the name of the defendant which he had procured to be discounted. But it was not shown that Mr. Tilden knew of the making of any of these notes until a short time before this suit was brought, and his evidence, taken on commission, was offered to show that when the existence of such notes first came to his knowledge, he took immediate steps to remove Mr. Wetmore from his agency, and to have notice given to the parties concerned that the notes were issued without any authority whatever, and would not be recognized. This evidence, on objection for the plaintiff, was ruled out.

So far as we can judge from this record, there is no ground for the suggestion that Mr. Tilden had knowledge that such notes were being issued, or any reason to suspect that such was the fact. It seems probable that Wetmore made the notes in his own interest, or in the interest of some other concern with which he was connected, and not in the interest of the New York Mine. Nor do we think there was anything in the course of the business as it had previously been conducted by him that should have led parties to take such notes without inquiry. It had been customary to transmit to Mr. Tilden the bills receivable and all moneys, and to draw

against them in paying demands against the company, and in providing funds to meet its current necessities; but this was a suitable, proper and prudent mode of doing the corporate business, and tended rather to negative than to support the existence of any authority in Wetmore to make notes. Indeed, it is difficult to understand how the putting out of notes could have been either necessary or convenient. Time drafts would accomplish quite as well any honest purpose that could have existed for making them, without at the same time exposing the corporation to the same risks; for the drafts would necessarily go forward to the financial officer of the corporation for payment, and would appear when paid, in the corporate accounts, while the notes, if fraudulently issued, might be kept from that officer's knowledge for a long time, perhaps for years, and, if the fraud was successfully carried out, perhaps permanently.

But it is further. insisted on the part of the plaintiff that the defendant corporation is chargeable with negligence in suffering Wetmore to manage the business independently as he did for so long a period, and that this negligence was so gross and so likely to mislead as to call for the application of the familiar and very just principle, that where one of two innocent parties must suffer from the dishonesty of a third, that one shall bear the loss who by his negligence has enabled the third to occasion it. *Merchants Bank v. State Bank*, 10 Wall., 604; *Bank of United States v. Davis*, 2 Hill, 465; *Holmes v. Trumper*, 22 Mich., 427–434; *Farmers' etc. Bank v. Butchers' etc. Bank*, 16 N. Y., 133; *Welland Canal Co. v. Hathaway*, 8 Wend., 480; *N. Y. & N. H. R. R. Co. v. Schuyler*, 34 N. Y., 30.

While the principle invoked is a very just and proper one, it is one that must be applied with great circumspection and caution. Any person may be said to put another in position to commit a fraud when he confers upon him any authority which is susceptible of

abuse to the detriment of others; but if the authority is one with which it is proper for one man to clothe another, negligence cannot be imputed to the mere act of giving it. Any one who entrusts to another his signature to a written instrument furnishes him with the means of perpetrating a fraud by an unauthorized alteration or other improper use of it. But if the instrument was a proper and customary instrument of business, and has been issued without fraudulent intent in a business transaction, there is no more reason for imposing upon the maker the consequences of a fraudulent use of it than there is for visiting them upon any third person. In other words, it is not the mere fact that one has been the means of enabling another to commit a fraud that shall make him justly chargeable with the other's misconduct; but there must be that in what he has done or abstained from doing that may fairly be held to charge him with neglect of duty.

If neglect of duty is imputed in this case, it is important to know in what it consists. The argument made for the plaintiff directs our attention to the following facts:

1. Mr. Tilden and Mr. Wetmore were the sole corporators having substantial interests, and without any supervision by Mr. Tilden, Mr. Wetmore has been suffered for many years to manage the business at the mine as he pleased; the public dealing with no other person, either natural or artificial, and having no reason to suppose that any one was reserving from Mr. Wetmore any authority or questioning his power to act for the corporation and make use of its name and its credit to the full extent that any one might use them under corporate authority. And the making of promissory notes is an act so similar in all respects to that of drawing bills, and so likely to be conferred where the other is given, that one might fairly infer its existence in this case in view of the extensive use made by Wetmore of bills in the corporate business.

2. Mr. Tilden and Mr. Wetmore have conducted the corporate business as if they were partners; Mr. Wetmore exercising unlimited authority at one place and Mr. Tilden at the other; and the public had a right to suppose that they were trusting each other to the full extent that partners do and must; and therefore that Mr. Wetmore might bind himself and Mr. Tilden,—or what is the same thing—might bind the corporation, by notes in its name.

3. These views are strengthened by the fact that the corporators did not for years hold corporate meetings or go through the ordinary corporate forms of election, as they should have done, and would be expected to do if they expected to insist upon the application of strict rules in the corporate dealings with others.

These are the facts which are supposed to have enabled Mr. Wetmore to impose upon the public with an appearance of authority which had not been conferred upon him. So far as the neglect to hold corporate meetings or to go through corporate forms is concerned, there is no ground for making it cut any figure in the case. It does not appear that this plaintiff was influenced by any such neglect or knew anything about it; and from anything that appears their action would not have been affected by it in any way. It is therefore a fact entirely foreign to this controversy.

Neither do we perceive that the fact that Tilden and Wetmore conducted their business as if they were partners concerns this plaintiff in any manner. If Wetmore had dealt with the plaintiff in the character of a partner, and had by Mr. Tilden's course been enabled to deceive the bank officers into the belief that they were partners, the case would be different. But the plaintiff has dealt with no partnership: the notes sued upon were given as corporate notes, taken as corporate notes, and are now sued upon as corporate notes. The plaintiff must therefore make out a corporate liability; and as Wetmore gave the notes assuming to be empowered

thereby to pledge the corporate credit, it is of no importance whatever that perhaps he might have pledged his associate as a partner had he attempted to do so, and had the plaintiff taken from him paper that purported to be the paper of partners. For the purposes of this case it is sufficient to say that is not the case the pleadings make.

Nevertheless the plaintiff is perfectly right in the argument that the corporation must be held responsible for any appearances which these two corporators held out to the public whereby the plaintiff has been deceived to its prejudice. The plaintiff is therefore entitled to all that can be claimed from Mr. Wetmore's course of business as general agent, so far as it was known to Mr. Tilden. Now Mr. Tilden knew that Mr. Wetmore was managing the business as general agent with little or no supervision by any one; but it would be very dangerous to hold that this should charge him with Mr. Wetmore's frauds. There was nothing in this that might not happen in any case where the business was conducted by an agent at a distance from his principal; say by an agent in New York for his principal in London, or by an agent in San Francisco for a principal in one of the Atlantic cities. Mr. Tilden also knew that Mr. Wetmore was drawing and negotiating bills upon him in the name of the corporation; but this was a proper and customary mode of dealing as between principal and agent, and we see nothing in it calculated to mislead any one into the supposition that Mr. Wetmore was empowered to do for the company any thing not customary for such agents to do, and not included in the authority Mr. Tilden knew Mr. Wetmore to be exercising.

But before the maxim which the plaintiff invokes can be applied to the case, it is necessary to determine not only that fault is imputable to the defendant, but also that the plaintiff is free from negligence. There must be one innocent party and one negligent party before the requirements of the maxim are answered; and

the conduct of the plaintiff is therefore as important as that of the defendant. Was the plaintiff in this case free from negligence in discounting the three $5,000 notes? In law the officers of the bank must be held to have known that Mr. Wetmore had no right to make such paper without express authority, and we look in vain for any evidence that they demanded proof of such authority, or extended their inquiries beyond the agent himself. Moreover there was that on the face of these notes to suggest special caution; they were made by Mr. Wetmore in one capacity to himself and his associate in another capacity, and they indicated, or at least suggested an interest on his part in making them which was adverse to the interest of his principal.

The notes also bore the largest interest admissible under our statutes; and this fact, in the case of a corporation whose credit was such that its paper would be readily discounted, and having its office in the city of New York, might well have arrested attention. We do not think that when the bank discounted such paper without inquiry into the authority of Wetmore, it gave such evidence of prudence and circumspection as placed it in position to complain of Mr. Tilden's course of business as negligent. A fair statement of the case for the plaintiff is that both parties have been overtrustful in their dealings with Mr. Wetmore; the defendant not more so than the plaintiff. Unfortunately for the plaintiff, the consequences of the overtrust have fallen upon its shoulders.

The circuit judge in his instructions to the jury assumed that there was evidence in the case from which they might find that Wetmore was held out to the public as possessing the authority he assumed to exercise. We find no such evidence and there must therefore be a new trial. The case of the $1000 note is different, as already explained.

Some of the proceedings on the trial require atten-

tion, and especially the rule of cross-examination laid down by the circuit judge when Wetmore was on the stand as a witness for the plaintiff. Wetmore was manifestly a willing witness, and made such showing as was in his power in support of the authority which as general agent he had assumed to exercise. But although he was the first witness called, and the case involved nothing but paper made or indorsed by himself, he was not asked respecting his signatures, and the notes were not offered in evidence while he was upon the stand. The reason for this was apparent as soon as the cross-examination commenced, for when the witness was asked any questions concerning the notes, the purpose of which was to show that he had signed or indorsed them without authority and in fraud of defendant, and that he had admitted that such was the fact, objection was at once interposed on behalf of the plaintiff, and the circuit judge, remarking that the witness had given no testimony in reference to the notes, nor had any testimony been introduced by any other party in reference to them, nor had the notes been put in evidence, sustained the objection.

The question of the proper range of cross-examination has been discussed in this State until it would seem that further discussion must be entirely needless. *People v. Horton,* 4 Mich., 67, and *Campau v. Dewey,* 9 Mich., 381, would support the ruling of the circuit judge. But those cases have been repeatedly overruled. In *Chandler v. Allison,* 10 Mich., 460, 473, Mr. Justice Campbell undertook to lay down the proper rule. The object of cross-examination, he there explained, "is to elicit the whole truth concerning transactions which may be supposed to have been only partially explained, and where the whole truth would present them in a different light. Whenever an entire transaction is in issue, evidence which conceals a part of it is defective, and does not comply with the primary obligation of the oath, which is designed to elicit the whole truth. If the witness were,

as he always may be, requested to state what he knows about it, he would not do his duty by designedly stopping short of it. Any question which fills up his omissions, whether designed or accidental, is legitimate and proper on cross-examination. When the answers are given the nature and extent of the transaction become known from a comparison of the whole, and each fact material to a comprehension of the rest is equally important and pertinent. A party cannot glean out certain parts, which alone would make out a false account, and save his own witness from the sifting process by which only those omissions can be detected." One might suppose after reading this language, that it was written in anticipation of the proceedings in this very case; and for the specific purpose of expressing in clear and pointed terms the rule of law applicable to these very facts. Here the matter in issue was confined to the single point of Wetmore's authority, to make and endorse the paper sued upon; the questions on behalf of the plaintiff had been carefully restricted to that part of the facts which it was supposed would tend in its favor, and in respect to which a cross-examination could not be damaging, and were intended, instead of eliciting the whole truth, to conceal whatever would favor the defense: the witness, instead of being required, according to the obligation of his oath, to tell the whole truth, had been carefully limited to something less than the whole, and when questions were asked calculated to supply his omissions, they were ruled out because they did not relate to the precise circumstances which the plaintiff had thought for its interest to call out. It would be difficult to present a more striking illustration of the error in the rule in *People v. Horton* than is afforded by this case; for here was the principal actor in the transaction under investigation brought forward as a witness to support his own acts, but carefully examined in such a manner as to avoid having him utter a single word regarding the main fact,—though it was peculiarly within his own knowledge,

—and even his hand-writing was left to be proved by another. In that manner he was made to conceal not merely a part of the transaction but the principal part, and made to tell not the whole truth according to the obligation of his oath, but a small fraction of the truth only; a fraction, too, that was important only as it bore upon the main fact which was so carefully kept out of sight while this witness was giving his evidence. It is true the defense was at liberty to call the witness subsequently, but this is no answer: the defense was not compellable to give credit to the plaintiff's witness as its own for the purposes of an explanation of facts constituting the plaintiff's case, and a part of which the plaintiff had put before the jury when examining him. One of the mischiefs of the rule in *People v. Horton* was that it encouraged a practice not favorable to justice, whereby a party was compelled to make an unfriendly witness his own, after the party calling him had managed to present a one-sided and essentially false account of the facts, by artfully aiding the witness to give such glimpses of the truth only as would favor his own side of the issue.

What has been said on this point has in substance been said many times before. *Haynes v. Ledyard*, 33 Mich., 319; *Hamilton v. People*, 29 Mich., 173; *Campau v. Traub*, 27 Mich., 215; *Wilson v. Wagar*, 26 Mich., 452; *O'Donnell v. Segar*, 25 Mich., 367; *D. & M. R. R. v. Van Steinburg*, 17 Mich., 99; *Thompson v. Richards*, 14 Mich., 172; *Dann v. Cudney*, 13 Mich., 239. The necessity of repeating it is a singular illustration of the difficulty with which a mischievous but plausible precedent is sometimes got rid of.

The question put to Wetmore on cross-examination, whether he had not admitted his fraud in the issue of this and similar paper, should have been allowed, as bearing directly upon the trustworthiness of his evidence. The evidence of Mr. Tilden that the directors repudiated this paper as soon as it came to their knowledge was

also admissible. The repudiation could not. invalidate paper issued with proper authority, but it could and would preclude those forcible inferences that would naturally be drawn in favor of the legitimacy of the paper, in the absence of any showing that protest was made when its existence became known.

Many subordinate questions are rendered immaterial by the views expressed on the main question.

The judgment must be reversed with costs, and a new trial ordered.

The other Justices concurred.