ELLEN H. CASTLE *vs.* BELFAST FOUNDRY COMPANY.

Waldo. Opinion March 11, 1881.

*Corporation, authority of officers. Promissory notes — signature to. Money counts.*

A vote of the directors of a corporation that the president have full power and control of its business, authorizes him to purchase the materials to be used in its operations, and to borrow money for the corporation, and give its note for the money borrowed.

A note signed " Belfast Foundry Company, W. W. Castle, President," binds the corporation; and if it did not, the corporation, in this case, would be liable on the money counts for money loaned to it, and applied to the purchase of materials for its use or the payment of its debts. And it is immaterial whether the money is passed over to the corporation by the lender, or obtained by the president upon a deposit in a savings bank, transferred to him for that purpose.

ON REPORT.

The opinion states the case.

The law court to render such judgment as the law and evidence (legally admissible) require.

*Philo Hersey,* for the plaintiff, cited: Field, Corp. § § 271, 273–6; 3 Gratt. 215; 10 Ohio, 372; 1 Sand. Ch. (N. Y.) c. 280; *Beers* v. *Phœnix Glass Co.* 14 Barb. 358; *Graffins* v. *Land Co.* 3 Phila. Pa. 447; 3 U. S. Dig. 697; Green's Brice's *Ultra Vires,* 2d ed. 493; 5 Allen, 338; 59 Maine, 90; 12 N. H. 205; 1 Pick. 215; 12 Cush. 1; 7 Met. 224; 39 Maine, 316; 12 Maine, 354; Story, Agency, 335; 7 Cranch, 299; 35 Maine,

143; *Episcopal Church Prop'rs* v. *Episcopal Church*, 1 Pick. 372; 19 N. Y. 60; 5 Cush. 158; 12 Mass. 237; 8 Pick. 178; Ang. & Ames, Corp. § 297; *Bank of U. S.* v. *Dandridge*, 12 Wheat. 64; 2 Kent, 288, 291; 13 Ill. 366; 41 Maine, 574; R. S., c. 46, § 16.

*Wm. H. Fogler*, also for plaintiff.

*A. P. Gould*, for the defendant.

The notes do not purport to be the defendants', not their promise, but W. W. Castle's. To make them the notes of the company, they should have been signed, "Belfast Foundry Co. *by* W. W. Castle," or, W. W. Castle *for* Belfast Foundry Co. There must be some words used, which fairly interpreted, would indicate that the promise is not that of the person who signs, but of another. *Mellen* v. *Moore*, 68 Maine, 390; *Sturdivant* v. *Hull*, 59 Maine, 172; *Tucker M'f g Co.* v. *Fairbanks*, 98 Mass. 101; *Ballou* v. *Talbot*, 16 Mass. 461.

In *Draper* v. *Mass. Steam Heating Co.* 5 Allen, 338, where the note was signed "Mass. Steam Heating Co. L. L. Fuller, Treasurer," the question whether that was a well executed note of the corporation was not at issue, the corporation was defaulted. There are some remarks of the court, entirely unnecessary to the decision, mere *obiter dicta*, which are utterly inconsistent with the decisions of that court. It is a notable fact, that the case is never cited, nor alluded to in subsequent cases in that state touching the necessary form of signature by an agent to bind a principal.

The remarks of our court touching that case in *Atkins* v. *Brown*, 59 Maine, 93, cannot be considered as giving deliberate sanction to the remarks of the court in that case.

For a large number of illustrations for modes of signing, see 1 Daniel, Nego. Instr's, § § 400–408.

Castle had no authority to borrow money or give notes in behalf of the company. Corporations are bound by parol contracts made by an agent, only when authorized by vote or by its by-laws. R. S., c. 46, § 15; 1 Par. Contr. 7; Ang. & Ames on Corp. § 297; *Harward* v. *Humes*, 9 Ala. 659; *McCullough* v.

*Moss*, 5 Denio, 575 ; *Cattron* v. *First Universalist Society*, 46 Iowa, 106 ; *N. Y. Iron Mine* v. *First Nat. Bank*, 18 Alb. Law J. 489 (Mich.) ; 1 Daniel Nego. Instr. § § 387–397 ; *Smith* v. *Cheshire*, 13 Gray, 318 ; *Tabor* v. *Cannon*, 8 Met. 458 ; *Paige* v. *Stone*, 10 Met. 168 ; *Bates* v. *Keith Iron Co.* 7 Met. 224 ; *Brown* v. *Parker*, 7 Allen, 337 ; *Gould* v. *Norfolk Lead Co.* 9 Cush. 338 ; *Emerson* v. *Providence Hat Co.* 12 Mass. 237 ; *Sewanee Mining Co.* v. *McCall*, 3 Head. 619.

The defendants are not liable on the money counts for the money borrowed by Castle, without authority, even if it were made to appear that he appropriated it to their use. *Kelly* v. *Lindsey*, 7 Gray, 287 ; *Railroad Nat. Bank* v. *Lowell*, 109 Mass. 214 ; *Agawam Nat. Bank* v. *So. Hadley*, (Mass.) Law Reporter, May 22, 1880 ; *Siebrecht* v. *New Orleans*, 12 La. Ann. 496 ; *Jones* v. *Lancaster*, 4 Pick. 149 ; *French* v. *Auburn*, 62 Maine, 452 ; *Loker* v. *Brookline*, 13 Pick. 343 ; *Haskell* v. *Knox*, 3 Maine, 445 ; *Moor* v. *Cornville*, 13 Maine, 293 ; *Morrell* v. *Dixfield*, 30 Maine, 157 ; *Field* v. *Towle*, 34 Maine, 405 ; *Ingalls* v. *Auburn*, 51 Maine, 352 ; *Blanchard* v. *First Ass. of Spiritualists*, 59 Maine, 202 ; *Jones* v. *Wilson*, 3 Johns. 429 ; *Beach* v. *Vandenburgh*, 10 Johns. 369 ; *Wallkill* v. *Mamakating*, 14 Johns. 87 ; 1 Chitty Pl. 350.

Mrs. Castle transferred twenty-four hundred dollars of her deposit in the savings bank to her husband. She has no claim against the association, unless she can trace the fund, the identical money, into the hands of the defendant. The cases proceed upon the ground, that its identity is preserved ; as in *Mason* v. *Waite*, 17 Mass. 560, the court say "the identical bills paid by Sargent to the defendant, were proved to be the property of the plaintiff." *Goodell* v. *Buck*, 67 Maine, 514 ; 2 Story's Eq. 1259 ; *Benoit* v. *Conway*, 10 Allen, 528.

*Joseph Williamson*, also for the defendant.

APPLETON, C. J.    This is an action of assumpsit on three promissory notes of the following form :

"$330.36.                                    Belfast, June 1, 1873.

One day after date we promise to pay to the order of Ellen H. Castle, three hundred and thirty dollars and thirty-six cents, at

office Belfast Foundry Company, value received, with interest at ten per cent.

No. 13–1                        Belfast Foundry Co.
Due June 2, 1873.               W. W. Castle, Pres't".

In addition to the counts on the notes, are the usual money counts.

The evidence shows beyond any reasonable doubt that the plaintiff loaned the amounts for which the several notes were given, to the defendant corporation, through the agency of its president, and that the money so loaned, was appropriated in good faith, to pay the laborers in its employ, and for the materials used in its business.

The defendant corporation resists the payment of the notes in suit on various grounds.

1. It is claimed that "Castle had no authority to borrow money or to make or sign a promissory note in behalf of the Belfast Foundry Company."

Though a corporation may not be expressly empowered to make a note, or accept a draft, yet it may do so for any debt which it may lawfully contract. *Came* v. *Brigham*, 39 Maine, 35. A corporation may issue negotiable paper for a debt contracted in the course of its proper business. *Kelley* v. *Brooklyn*, 4 Hill, (N. Y.) 263. If it can contract a debt, it can give a note as evidence of its indebtedness. *Clarke* v. *School District*, 3 R. I. 199; *Moss* v. *Oakley*, 2 Hill, (N. Y.) 265.

W. W. Castle was president, treasurer and director of the defendant corporation, owning three fourths of its stock. He had charge of its books, solicited and filled orders, purchased stock, and was the general manager of its concerns, and transacted all its business. As he could contract for the materials to be used, and for the laborers to be employed, it would seem that he might give a note for any indebtedness arising in the general management of the business intrusted to his charge.

But that is not all. On February 5, 1873, at a meeting of the directors, it was voted "that the president have the full power and control of all the business of the company."

The evidence is, that the president, after this vote, did all the business of the corporation for the following year. As he could

purchase materials and employ men, under this vote he could give notes for debts arising under contracts made by him, to the persons to whom the corporation was indebted. So the authority to give such notes, implies and includes the power to give notes for the money with which to pay such indebtedness, whether in the form of notes, or on the liability of the original contract.

In *Whitney* v. *South Paris Manufacturing Co.* 39 Maine, 317, the agent was authorized "to purchase stock and make sales for the corporation, to hire and discharge help, and manage the concerns of corporation, *being subject at all times to the direction of the board of directors.*" The restriction in that case imposed on the agent does not exist in the one at bar. In delivering the opinion of the court, SHEPLEY, C. J. said: "The usual course of transacting the financial affairs of the company appears to have been by the agent. He procuring loans of money from banks and individuals, on notes of the company made by him, on drafts drawn by him, and on notes and drafts payable to the company and indorsed by him. Notices on such paper, given to him, would bind the company, and he might waive the right to require notice and render the conditional liability absolute. This would come within the scope of his authority to create an absolute liability; it being but one of the forms of doing it. When notes became payable and new loans or an extension of the time for paying those existing became necessary, he must have the power to meet the exigency, or the credit of the company must be destroyed and his financial operations cease." In *Bates* v. *Keith Iron Co.* 7 Met. 224, the agent, as in the case last cited, was subject to the control of the directors. It was held that the notes of the agent without the assent of the directors were valid, and that their assent might be presumed. "Unquestionably," observes WILDE, J. "he was fully authorized to employ workmen to carry on the business of the concern, and to pay them with the funds of the corporation; or, not being in funds, he had authority to give notes of the corporation. *Odiorne* v. *Maxcy*, 13 Mass. 178; and 15 Mass. 39; *White* v. *Westport Cotton Man'f. Co.* 1 Pick. 220." It is clear, therefore, that the president had authority to give notes, which would be binding upon the corporation.

Further, it appears from the records of the corporation, that at a meeting of the directors on December 29, 1879, the directors, W. W. Castle and Charles P. Hazeltine, present, the president and treasurer, W. W. Castle, made his report upon the affairs of the company.

"Voted, that all acts of W. W. Castle as president and treasurer of the company, from January 23, 1873, to the present time be and are hereby ratified and confirmed.

F. S. Wallis, Clerk, *pro tem.*"

There were but three directors. The action of two is binding on the corporation, It would *seem* to be so, though one may have deceased or resigned.

2. It is urged that "the notes declared upon do not on their face, purport to be the promissory notes of the Belfast Foundry Company."

The notes in suit were payable "at office of Belfast Foundry Company." They were intended to bind some person or corporation. They were not intended to bind the president personally, for if they had been so intended, he would not have signed the name of the corporation whose agent he was, and which he had ample authority to bind. In *Draper* v. *Massachusetts Steam Heating Co.* 5 Allen, 338, the signature was as in the case at bar. Thus, "Massachusetts Steam Heating Company, L. S. Fuller, treasurer." In his opinion, HOAR, J. says: "The name of the company is signed to the note. This signature could not be made by the corporation itself, and must have been written by some officer or agent. It was manifestly proper that some indication should be given by whom the signature was made, as evidence of its genuineness; and Fuller added his own, with the designation of his official character. And that the whole taken together shows it to be the signature of the Massachusetts Steam Heating Company, and not of Fuller." The principle decided in this case is to be found in *Abbott* v. *Shawmut Ins. Co.* 3 Allen, 215, and in *Atkins* v. *Brown*, 59 Maine, 90.

In the cases cited by the learned counsel for the defendant, the signer appends to his signature a description of himself as agent, president, trustee or treasurer of some corporation as in *Slawson*

*v. Loring*, 5 Allen, 340, the next case to that of *Draper* v. *Mass. Steam Heating Co.* before cited, as well as in the other cases relied upon.

3. It is insisted that "the defendants are not liable upon the money count, for the money borrowed by Castle without authority, even if it were made to appear that he appropriated it to their use."

It has been clearly shown that Castle was authorized to borrow the sums in controversy and that they were applied to meet the liabilities of the defendant.

The note given for a debt or loan is undoubtedly presumptive evidence of payment of such debt or loan. It is only to be regarded as payment, when the security of the creditor is not impaired. But if negotiable paper is taken under a misapprehension of the rights of the parties, the presumption of payment may be rebutted. *Paine* v. *Dwinel*, 53 Maine, 53.

If the notes in this case are not binding it is obvious that they were taken under a most material misapprehension, for it cannot be doubted that they were given and taken as valid notes upon which the defendant corporation is liable.

Here, then, was a loan, the note given for it not binding. The loan remains. The president, Castle, was authorized to make it. The funds borrowed were applied to the discharge of corporate liabilities. The note given not being valid, the plaintiff may proceed on the original cause of action. The case on this hypothesis stands as if no note had been given. Assuredly, the loan to the defendant, through the agency of an authorized agent, and their use of the same would constitute a good ground of action.

4. It is objected that the two notes dated October, 1873, for two thousand dollars and for four hundred dollars, were not given for borrowed money, but for the plaintiff's credit in the savings bank.

It is immaterial whether the plaintiff loaned bills or loaned a draft on which the money was collected. It is equally unimportant, she furnishing the book of the savings bank, whether her deposit was drawn by her, or by her authorized agent, provided the Belfast Foundry had the funds so drawn out. It is abundantly

proved that it had the benefit of them. The plaintiff should recover for them.

*Defendant defaulted.*

WALTON, BARROWS, VIRGIN LIBBEY and SYMONDS, JJ., concurred.