Thomson, J.
The appellee brought suit against the appellant upon the following instrument:
V “$500.00. Greeley, Colo., May 13, 1891.
“Eighteen months after date, I, we or either of us, promise to pay to the order of M. B. Williams, Five Hundred Dollars at Union Bank, Greeley, Colorado, including exchange, collection charges, and interest at ten per cent, per annum from date until due. And in case of default, principal and accrued interest to bear interest from maturity at the rate of fifteen per cent, per annum until paid; together with ten per cent, attorney’s fees, if collected through an attorney, either by suit or otherwise; interest payable annually.
“Value received.
‘ ‘ For.......... “ The Sanford Cattle Co.
“No........... “S. Sanford, Manager.’’
*380 The execution of the note was denied by the answer. The plaintiff had judgment, and the defendant appealed.
The defendant was a corporation, organized for the purpose of dealing in and raising cattle and other stock, and acquiring lands and other property necessary in the carrying on of its business. The incorporators were John Best, Stewart Sanford and Louis C. Snyder, and they were also its directors. ’ The office of the company was in Central City, Gilpin county; and it occupied a ranch in Weld county, on which Sanford resided. On the 13th day of May, 1891, Mr. Sanford, representing himself as the company’s manager, bought an engine from the plaintiff, to be used, as he said, in operating a pump for the irrigation of the company’s land. The price was $500, and the note in suit was executed as evidence of the debt. Whether Sanford had authority to execute the note in behalf of the company, was the only question in the case.
The evidence was that, apparently, Mr. Sanford had charge of the company’s business in Weld county. Instances were given of sales by him of the company’s cattle, his employment of help in the baling of hay, and in the round-up, his receipt of money for the company, and the payment by him of bills against the company. The evidence might warrant the conclusion that Sanford represented the company in the transaction of its business in Weld county, and possessed the powers usually incident to the conduct of such business. Whether the purchase of this engine was within the scope of his apparent authority, is at least doubtful. If it was not, a ratification by the company would be necessary to render it-liable on the contract. But there was no evidence that the company ever received the engine, or derived any benefit from it, or even knew of its existence. However, the *381 question of the liability of the company on the contract of purchase, is not in the case. The suit was brought on the note, and if that was not the note of the company, the action must fail.
There was no pretense that Sanford had any direct authority to execute the note; as a director of the company merely he had none; and if such authority existed at all, it must be implied from the other facts which were laid before the court. The strongest inference those facts will justify is that Sanford was the company’s general manager, and had full charge of its business in Weld county. That business was confined to dealing in cattle and other stock, and acquiring such lands and other property as might be necessary in carrying it on; and, in virtue of his authority as general manager, he might bind the company by his purchase and sales of cattle and stock, his employment of labor, and his acquisition of property necessary to its business. But this general authority would not include the power to pledge the credit of the company, or to bind it by a written contract for the payment of its debt in the future. The issuing of promissory notes was not a power necessarily incident to the conduct of the business in which the company was engaged, and, therefore, not within the scope of the authority possessed by Sanford as general manager. — Breed v. Bank, 4 Colo. 481; N. Y. Iron Mine v. Bank, 39 Mich. 644; Electric Light Co. v. Hutchinson, 25 Ill. App. 476.
In N. Y. Iron Mine v. Bank, Cooley, J., in an elaborate discussion of the question, said:
“It was not disputed by the defense that the corporation as such had power to make the notes in suit. The question was whether it had in any manner delegated that power to Wetmore. We cannot agree with the plaintiff that the mere appointment of general agent confers any such power. White v. West- *382 port Cotton Manf’g Co., 1 Pick. 215, is not an authority for that position, nor is any other case to which our attention has been invited. In McCullough v. Moss, 5 Denio 567, the subject received careful attention, and it was held that the president and secretary of a mining company, without being authorized by the board of directors so to do, could not bind the corporation by a note made in its name. Murray v. East India Co., 5 B. & Ald. 204; Benedict v. Lansing, 5 Denio 283; and The Floyd Acceptances, 7 Wall. 666, are authorities in support of the same view. The plaintiff, then, cannot rest its case on the implied authority of the general agent; the issuing of promissory notes is not a power necessarily incident to the conduct of the business of mining, and it is so susceptible of abuse to the injury, and indeed to the utter destruction of a corporation, that it is wisely left by the law to be conferred or not as the prudence of the board of directors may determine.”
If Sanford, while conducting the company’s business, had previously made notes in its name, which it had paid, or if, with knowledge of this note, it had failed to disavow it, it is possible the case would present a different aspect; but, so far as appears, Sanford.had never before undertaken to bind it by note, and there was no evidence that it had any knowledge of the existence of this note until suit was brought. It is said, however, that as Sanford was a director of the company, his knowledge was its knowledge; and that he knew of the existence of the note, for he made it. There are cases in which a corporation may be charged with a knowledge possessed by a director, but this is not one of them. Sanford executed the note himself; and in undertaking, without authority, to impose an obligation on the company, he occupied a position adverse to it. He was not acting in its interest. The argument amounts to this, that a corpo *383 ration will be bound by the act of a director injurious to its interests, because bis knowledge of wbat be did himself, is imputable to it; and its acquiescence will be inferred from its silence. Thus a director might plédge the credit of bis company for bis own advantage until bankruptcy ensued, and the corporation would be helpless, because bis knowledge, although carefully concealed, of bis own fraudulent acts, would estop it from disputing their validity. Such is not the law. Tbe knowledge possessed by an officer of bis own unauthorized act, is not the knowledge of the corporation. — Barnes v. Gas Light Co., 27 N. J. Equity 33; Hyde v. Larkin, 35 Mo. App. 365; 4. Thompson on Corporations, § 5310.
In N. Y. Iron Mine v. Bank, supra, tbe agent for whose act beyond bis authority the corporation was held not liable, was also a director.
On tbe hypothesis that Sanford bad tbe power to contract an indebtedness against tbe company on account of tbe engine,' by tbe instrument be executed, be undertook to charge it with burdens and obligations not implied in tbe contract of purchase. Tbe note, as made, would disable tbe company from discharging its debt for eighteen months, and would compel it to pay as interest, until due, two per cent., and afterwards, seven per cent., more than tbe legal rate, and to pay ten per cent, in addition, if it should be collected, with or without suit, through an attorney; and even a general power to execute notes for its debts, would not embrace tbe instrument before us.
Upon tbe showing made at tbe trial, this note was not tbe note of tbe defendant, and tbe judgment must be reversed. Reversed.