Argued 9 June, decided 5 July, 1904.

**BAINES *v.* COOS BAY NAVIGATION CO.**

[77 Pac. 400.]

CORPORATIONS — PRESUMPTIVE KNOWLEDGE OF OFFICERS AS TO POWER OF CORPORATE AGENTS.

1. Corporate officers are chargeable with knowledge of the extent of the authority of agents and other officers of their corporations, and as to them the doctrine of implied authority is not applicable.

CORPORATIONS — IMPLIED POWER OF GENERAL MANAGERS.

2. Excepting in banks, managing agents of corporations have no implied power to issue, accept, or indorse negotiable paper on behalf of their principals, unless there are pressing legitimate demands and the manager is without funds.

CORPORATIONS — POWER OF MANAGER TO ISSUE NOTES.

3. The general manager of a corporation having entire control of its affairs,

has implied power to issue negotiable paper in the name of the corporation for its benefit, particularly where he owns all the stock and is practically the company.

QUESTION FOR JURY—POWER OF CORPORATION MANAGER.

4. In an action on the notes of a corporation executed by the general manager to secure the release of pressing demands against the company, the question whether the manager had implied power to execute the notes should be submitted to the jury.

DISCRETION OF COURT AS TO AMENDMENTS OF PLEADINGS.

5. Granting permission to amend pleadings is a matter of discretion with the trial judge, which was well exercised in this instance.

From Coos : JAMES W. HAMILTON, Judge.

Action by W. E. Baines against the Coos Bay, Roseburg & Eastern Railroad and Navigation Company, on sundry promissory notes. The court directed a verdict for defendant, from which plaintiff appeals.      REVERSED.

For appellant there was a brief over the names of *Jos. W. Bennett. T. S. Minot,* and *Andrew J. Sherwood,* with an oral argument by *Mr. Bennett* and *Mr. Minot.*

For respondent there was a brief over the names of *John S. Coke, Jr.,* and *Williams, Wood & Linthicum,* with an oral argument by *Mr. J. Couch Flanders.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is a second appeal by the plaintiff from a judgment rendered against him for costs and disbursements upon a verdict returned in pursuance of instructions. The question involved is whether the testimony taken at the trial was sufficient to be submitted to the jury as tending to show that the general manager of a railroad company possessed implied power to execute on its behalf promissory notes evidencing debts claimed to have been incurred by it in the legitimate exercise of its business ; and the chief error relied upon is the action of the court in charging the jury to find for the defendant.

The bill of exceptions contains all the evidence, from which it appears that the defendant is a corporation existing under the laws of this State, and organized to con-

struct, maintain, and operate a railroad from Marshfield to Roseburg ; that one R. A. Graham was its promoter and the subscriber for all its capital stock, though each director was the nominal holder of enough thereof to qualify him for office. At the first meeting of the board of directors, held August 19, 1890, the following, among other resolutions, was adopted: " That there shall also be elected a general manager, whose authority shall be to have the general management of the business of the company"; and in pursuance thereof Graham was chosen to that position. The plaintiff, W. E. Baines, was a director, and also secretary and treasurer, of the corporation ; but his duties as such were only nominal. Graham having entered into a contract with the corporation to build its road, plaintiff was employed to secure rights of way, and also performed other duties from the time of the organization of the company until March 5, 1894, when he was discharged by Graham. He thereupon filed in the office of the county clerk of Coos County his notice of lien on the roadbed, structure, etc., to secure the sum of $12,750, and on April 18, 1894, the corporation being without funds, its general manager, in settlement of plaintiff's claim, executed to him on its behalf two promissory notes, each for the sum of $4,000, payable in twelve and eighteen months, respectively, with interest at the rate of seven per cent per annum. The notes not having been fully paid this action was instituted April 25, 1900, and at the former trial it was held that the testimony, though controverted, was sufficient to be submitted to the jury as tending to show that the corporation was indebted to plaintiff (*Baines* v. *Coos Bay Nav. Co.* 41 Or. 135, 68 Pac. 397, 26 Am. & Eng. R. R. Cas. N. S. 412); and the conclusion then reached has not been changed by the evidence given at the subsequent trial, from which the jury might reasonably have inferred that a consideration existed for the execution of the notes.

1. Graham had no express authority to execute negotiable instruments on behalf of the corporation, and, the plaintiff having been a director and an officer thereof, and presumed to know the measure of power delegated, no apparent holding out of the general manager can be invoked in his behalf; and it remains to be seen whether the testimony indicates that Graham possessed implied authority to evidence the indebtedness of his principal by executing the notes in question.

2. The rule is general that no managing agent of a corporation, except the cashier of a bank, possesses implied power to bind it by issuing, accepting, or indorsing on its behalf negotiable instruments: 10 Cyc. 929; 3 Clark & Marshall, Private Corp., § 700; 2 Cook, Corporations, (5 ed.) § 719; *McCullough* v. *Moss*, 5 Denio, 567; *Culver* v. *Leovy*, 19 La. Ann. 202; *New York Iron Mine* v. *Negaunee Bank*, 39 Mich. 644; *Helena Nat. Bank* v. *Rocky Mt. Tel. Co.*, 20 Mont. 379 (51 Pac. 829, 63 Am. St. Rep. 628); *Sanford Cattle Co.* v. *Williams*, 18 Colo. App. 378 (71 Pac. 889). This is so because such paper, in the hands of an innocent holder, is subject practically to no defense, and to protect corporations from the fraud of their agents, for through them alone can they act, the law requires that such an agent must possess express authority before he can bind his principal by putting in circulation negotiable instruments: *Elwell* v. *Puget Sound & C. R. Co.* 7 Wash. 487 (35 Pac. 376).

Where, however, the exigency of a creditor's demand against a corporation, incurred in the legitimate exercise of its business, necessitates a speedy settlement, it has been held that its general manager, for lack of funds, possesses implied power to evidence the debt by executing on its behalf a promissory note therefor. Thus, in *Bates* v. *Kieth Iron Co.* 7 Metc. 224, the defendant's agent was authorized by one of its by-laws "to manage the affairs of

the corporation committed to his care, according to the best of his ability, and at all times exercise the powers committed to him according to his discretion, and promptly to collect all assessments or other sums that shall become due to the corporation, and disburse them according to the order of the board of directors, saving that the board of directors shall be a board of control over him, and whenever they shall give him special instructions he shall be bound strictly to adhere to them." The defendant being indebted to an employé and not having the money with which to pay him, its managing agent gave him its promissory note, and in an action to recover the sum due thereon it was held that, if the board of directors did not interfere to control the agent's proceedings, he had authority to employ workmen and carry on the business of the corporation, and to pay them its funds therefor, and for want thereof to give its notes in payment. In *Castle* v. *Belfast Foundry Co.* 72 Me. 167, the directors of the defendant corporation, at a meeting of the board, voted "that the president have full power and control of all the business of the company"; and in pursuance thereof such agent borrowed money with which to purchase materials to be used in conducting the business of the corporation, and, having given its promissory notes therefor, it was held that he had sufficient authority to evidence the debt in that manner.

3. In *Fitzgerald & M. Const. Co.* v. *Fitzgerald*, 137 U. S. 98 (11 Sup. Ct. 36), it was held that when an officer of a construction company had full control of the building of a railroad, and was charged with the general management of the business of the corporation, promissory notes given by him, in the absence of contrary instructions by the directors, for moneys used to pay off indebtedness of the company arising in the construction of a railroad, could not be considered as in excess of his powers. As illus-

trating the implied power possessed by a subordinate agent, in the absence of his superior, to bind his principal by contracts entered into on its behalf in cases of urgent necessity, see *Holt* v. *Cumming,* 102 Pa. St. 212 (48 Am. Rep. 199); *Terre Haute & I. R. Co.* v. *McMurry,* 98 Ind. 358 (49 Am. Rep. 752); *Pacific R. Co.* v. *Thomas,* 19 Kan. 256; *Union Pac. R. Co.* v. *Winterbotham,* 52 Kan. 433 (34 Pac. 1052). So, too, where the general manager of a corporation owns practically all its capital stock, and "is virtually the corporation itself" (*Atlantic, etc., R. Co.* v. *Reisner,* 18 Kan. 458), the validity of promissory notes executed by him on its behalf to evidence *bona fide* corporate debts has been upheld (*Castle* v. *Belfast Foundry Co.* 72 Me. 167; *First Nat. Bank* v. *G. V. B. Min. Co.* [C. C.] 89 Fed. 439). Thus, in *Africa* v. *Duluth News T. Co.* 82 Minn. 283 (84 N. W. 1019, 83 Am. St. Rep. 424), it was held that the president and general manager of a corporation, who possessed and exercised with its assent general and unrestricted charge and control of the management of its affairs, and who was the sole stockholder thereof, had implied authority to borrow money to pay and discharge maturing debts and obligations of the corporation, and to make and deliver for that purpose its promissory notes.

4. It will be remembered that, the defendant herein being without funds, Graham, as its general manager, executed to plaintiff its promissory notes to secure a discharge of the lien, which was evidently a pressing demand. As a speedy settlement of the claim became necessary to maintain the credit of the defendant, that it might continue the building of the railroad, we think the court could not say, as a matter of law, in view of the necessity adverted to, that Graham was without implied power to make the notes in question. The general manager of a corporation should not, except in cases of extreme necessity, be permitted to issue negotiable instruments without express authority,

even to evidence *bona fide* debts contracted by it in the legitimate exercise of its business; for, if he were invested with implied power in all cases, he might, by issuing promissory notes, impose upon the corporation excessive burdens and prevent an inquiry by the stockholders into the reasonableness of the creditor's claim thus approved by him. Where, however, the general manager of a corporation is practically the owner of all its capital stock, self-interest must necessarily prompt him to protect the rights of his principal in approving claims against it, in which case no valid reason can well be assigned why power to issue negotiable instruments to evidence debts incurred in the legitimate prosecution of the business of the corporation should not be implied. In the case at bar Graham was the subscriber for all the capital stock of the defendant corporation, and, though he had hypothecated a part of his stock, he was legally the owner thereof, and as such might have possessed implied power to make the notes sued upon, and, in our opinion, the testimony was sufficient to be submitted to the jury on that question.

5. The plaintiff's counsel contend that the court erred in permitting the defendant, over their objection and exception, to file a third amended answer, alleging a want of authority on the part of the general manager to execute the notes. The privilege of amending pleadings is a matter within the sound discretion of the trial court, and, as no abuse thereof is manifest herein, its action will not be disturbed.

For the error committed in charging the jury to find for the defendant, the judgment is reversed, and a new trial ordered.                              REVERSED.