Argued June 27; affirmed July 9, 1935

# MITCHELL *v.* AUSPLUND

(47 P. (2d) 256)

*Oliver P. Coshow,* of Portland (Manning & Harvey, of Portland, on the brief), for appellant.

*F. P. Keenan,* of Portland (Reynolds, Flegel & Smith, of Portland, on the brief), for respondent.

KELLY, J. On the 6th day of February, 1932, while walking on the sidewalk along the north side of Southwest Yamhill street between Fourth and Fifth avenues in Portland, plaintiff stepped on an iron or steel door covering an opening in the sidewalk, slipped and fell. To recover for the injury which she alleges she then sustained, this action was instituted. The door upon which plaintiff fell was in the sidewalk adjacent to a parcel of land owned by the St. Francis Investment Company, an Oregon corporation which had issued 600 shares of corporate stock. At the time of plaintiff's fall, the defendant was the owner of all but two shares of the corporate stock of said corporation; and at all times since said corporation purchased the property adjacent to said sidewalk defendant has been the secretary-treasurer of said company.

Jacob Losli, a sheet and metal worker, testified that several years before the trial of this case in the cir-

cuit court defendant told him that, in the matter of repairing the building on said corporation's property, he the witness, should make any repairs the Hasson Brothers told him to make.

Hasson Brothers were the tenants in physical possession of said property.

Mr. Abraham Hasson testified that said tenants leased the property from Henry White for a term of twelve years. Sometime after the execution of said lease the St. Francis Investment Company purchased the property. Thereafter, the tenants presented their check for the rent to defendant, who took it and receipted for it for the corporation. ·

We quote from the testimony of this witness:

"Q. You find he (defendant herein) is in charge all the time for the corporation.

A. Yes.

Q. Do you sometime have to have any repairs made?

A. Well, sometimes we do.

Q. Who do you go to then?

A. According to the repairs we need.

Q. What repairs, for instance, do you need that you would have to consult with him?

A. The sidewalk and sometimes we used to have glass there and then they would put up a sign.

Q. What repairs would it be necessary that you would have to go to the St. Francis Investment Company for?

A. Well, I was authorized by him, if I needed any repairs, to go out myself and make them and send the bill to the company and they would take care of the bills.

Q. Who were you advised by?

A. Dr. Ausplund.

Q. If you needed any repairs, to go out and get them and send the bill to him for the company?

A. Yes.

\*      \*      \*      \*      \*

Q. Now, listen, with respect to the repairs you may be making from time to time, from the time you had the lease in the first place to the present time, if you needed any repairs, who would you go to see?

A. I told you I called Mr. Loslie to do the work.

Q. Who gave you the authority to do that?

A. I told you Dr. Ausplund gave me authority to.''

Mr. Hasson also testified that at all times when called Mr. Losli had done the work required.

Plaintiff's first assignment of error arises because Mr. Losli, a witness for defendant, was permitted to answer over plaintiff's objection this question:

''How did they (the doors) compare with the iron doors in the city of Portland?''

The answer was:

''I think it was a whole lot better than are in the city.''

Plaintiff also assigns error on the part of the court in failing to give her requested instructions as follows:

''An ordinance of the city of Portland requires owners of property to cover the doors covering openings in sidewalks to their property with non-slippery material. Failure to comply with that ordinance constituted negligence.''

''Violation of a valid ordinance requiring the performance of an act controls, and a failure to do that which the ordinance commands to be done constitutes negligence.''

''Violation of a valid ordinance designed for the protection of the person or property of citizens is negligence per se.''

The ordinance to which reference is made in the requested instructions, above quoted, is section 741 of the Building Code and Ordinance No. 33911, and is as follows:

''Openings in Sidewalks to be Provided with Doors.

Section 741. The opening for sidewalks covered in Section 739 shall be provided with substantial doors attached to a heavy frame built into the sidewalk. The door shall be constructed of heavy sheets of iron or steel which have a roughened top or such sheets of iron or steel shall be covered with some material which will give a non-slipping surface. The dimensions of the door in any direction shall not exceed the dimensions of the opening by more than six (6) inches. The door and frames shall be so constructed and maintained that there is no projection above the sidewalk exceeding one quarter of an inch, and existing doors which do not conform to the requirements shall be changed to conform within a period of ten (10) days after notice is given to change same. The axis of the doors shall be perpendicular to the curb line."

The foregoing ordinance was adopted and approved on the 13th day of March, 1918.

Miss Jennie Kadolph, one of plaintiff's witnesses, testified that the doors in suit had been in the sidewalk since 1914.

There is nothing in the record to indicate that when the above quoted ordinance was passed, said doors did not conform thereto. There is nothing to indicate that any notice was served requiring the owner of the premises or any one else to change the doors to conform to said ordinance.

It will be noted that there is no provision in the ordinance requiring any one to maintain said doors in a nonslippery condition by having a roughened top or being covered by a material giving a nonslippery surface or otherwise. It is provided that such doors shall be so maintained that there is no projection above sidewalk exceeding one quarter of an inch. It is not claimed that there was a projection above the sidewalk in violation of this last clause.

There being no provision requiring maintenance of the doors in a specified state of nonslipperiness, then the duty of the abutting owner was to exercise due care to the end that they would not be unsafe.

In seeking to restrict the jury merely to the question whether the abutting property owner violated the terms of the ordinance above mentioned, plaintiff overlooks the fact that the door in suit, as an existing door, when such ordinance was passed, may never have been brought into conformity with said ordinance; in which event the ordinance would not afford the standard of care required in its construction. The standard in that case would be as the court declared it, namely, reasonable care, or the care that an ordinarily prudent person would exercise. The plaintiff also fails to recognize that failure to maintain the door in question or keep it in proper repair may have been negligence on the part of the abutting owner. In that case, the ordinance under consideration affords no standard of care; but again such standard would be as the trial court declared it, namely, ordinary care: *Jegglin v. Roeder,* 79 Mo. App. 428; *Degheri v. Brooklyn Daily Eagle,* 136 Misc. 600 (240 N. Y. S. 304); *Perrigo v. St. Louis,* 185 Mo. 274 (84 S. W. 30); *City of Wabasha v. Southworth,* 54 Minn. 79 (55 N. W. 818); Annotation to *Callaway v. Newman Mercantile Co.,* 62 A. L. R. 1067, par. II, and cases there cited.

■ The question propounded to Mr. Losli and its answer are not of a character to constitute reversible error, if indeed they are anything more than descriptive.

The court did instruct the jury that a violation of the ordinance mentioned would constitute negligence per se.

We quote further from that part of the court's charge:

"Except, however, as required by the ordinance, the care required is to be measured by what an ordinarily careful and prudent person would exercise. So in order to find that the doors were in a negligent state of repair, it would be necessary for you to find from the evidence that the condition was such as would lead a reasonably prudent person to believe that they were unsafe or that accident was likely to result."

■ In plaintiff's fourth, fifth and sixth assignments, error is claimed by reason of the refusal of the court to give the following requested instructions:

## "IV.

"Where loss or injury is caused to a third person by the wrongful omission of an agent while acting for his principal, such agent is personally liable therefor, whether he is acting with the authority of the principal or not, to the same extent as if he were acting on his own behalf.

## "V.

"Where a principal is liable for the tortious negligence of his agent, the latter is both jointly and severally liable with him.

## "VI.

"It is stipulated in this action that defendant, E. G. Ausplund, owns 598 shares of the capital stock of the St. Francis Investment Co., that the Ada Ausplund owns one share and T. W. Armstrong owns one share. I instruct you that defendant controls that corporation and is personally liable for the negligence of that corporation. If you find said corporation negligently omitted to maintain the doors covering an opening in said sidewalk adjacent to its property in a safe condition for pedestrians, defendant is liable to respond in damages if you find plaintiff suffered injuries as a result of the slippery condition of said doors."

The fourth and fifth assignments are without merit for the reason that the court instructed the jury as to the personal liability of an agent in case such agent neglected to maintain and keep the sidewalk doors in repair, where such agent assumed that duty or was in complete and entire charge of the property and the necessary means were provided and available to him.

■ There is a line of authorities not necessary to cite or consider here holding that for mere nonfeasance, as distinguished from misfeasance, an agent cannot be held personally liable.

■■ The instruction upon which the sixth assignment is based omits any reference to the effect of plaintiff's contributory negligence, if any, and for that reason ought not to have been given. Moreover, the requested instruction invades the province of the jury, and assumes a fact to have been proved, which was properly left by the trial court to the jury for its determination.

The text of the section in Corpus Juris cited by plaintiff declares:

"Thus where certain officers are the sole corporate owners of the corporation, they are not limited in the control or corporate affairs by a board of directors which must necessarily consist of dummies, and the corporation is bound by the acts of officers who are in reality its owners and are permitted by the directors to manage the business." 14a C. J. 361, § 2223, notes 54 and 65.

*Nunnelly v. Southern Iron Co.,* 94 Tenn. 397, 416 (29 S. W. 361, 28 L. R. A. 421), cited by plaintiff, was tried to the court without the intervention of a jury, and the supreme court held that there was no evidence in the record to sustain the finding of the circuit judge in favor of the two individual defendants, who were presi-

dent and general manager of the corporate defendants. The nuisance involved in that case consisted of the flow upon plaintiff's property of noxious deposits. In examining the question of the liability of these individuals, the court did not find a case of a single isolated act of negligence or misfeasance. The rights of the plaintiff were continually ignored for years and the supreme court were convinced that both of the individual defendants knew for a long time that the operation of the corporate defendants' works was continually causing injury to plaintiff's property; and that for years they permitted this injury to go on without any effort to provide means to avoid it.

*Lane v. National Ins. Agency,* 148 Or. 589 (37 P. (2d) 365), also cited by plaintiff, construed the evidence concerning the relations of the president and vice president of these corporations and held that they were shown by such evidence to be managing officers thereof.

*Baines v. Coos Bay Nav. Co.,* 45 Or. 307, 312, 313 (77 P. 400), also cited by plaintiff, holds that the evidence of the implied power to issue negotiable instruments on the part of the general manager of the corporation, who was practically the owner of all of its capital stock, was sufficient to be submitted to the jury.

*First Nat. Bank v. G. V. B. Min. Co.,* 89 Fed. 439, 444, also cited by plaintiff, is a suit in equity where the evidence was such as to convince the court that notes executed in Idaho for defendant, a New York corporation, by the chief and managing officer of all the corporation's business in Idaho, and the proceeds from which were placed to the credit of the corporation and paid out upon its checks, were valid obligations of said corporation.

■ In each of the authorities so cited, the conclusion, that liability attached, involved a consideration of the

facts. The fact, in itself alone, that some individual owns a large amount of stock issued by a corporation, does not, nor could it, warrant or justify an instruction that such individual is personally liable for the negligence of that corporation. Other facts, as outlined by the testimony quoted herein, must be taken into consideration together with the admitted facts in order to determine whether defendant was personally liable as an agent of said corporation. That was the province of the jury and not of the judge of the court.

No reversible error appearing, the judgment of the circuit court is affirmed.

Belt, J., not sitting.