Argued September 12, reversed and remanded November 28, 1950, petition for rehearing denied January 24, amended mandate ordered March 7, 1951

# GOW *v.* MULTNOMAH HOTEL, INC., A CORPORATION, ET AL.

224 P. 2d 552; 228 P. 2d 791

*James K. Buell,* of Portland, argued the cause for appellant. On the brief were Harold A. Seering, of Seattle, Washington, and Griffith, Peck, Phillips & Coughlin, of Portland.

*James Arthur Powers,* of Portland, argued the cause for respondents. With him on the brief were Veazie, Powers & Veazie and Claude M. Johns, Jr., of Portland.

Before BRAND, Acting Chief Justice and BAILEY*, HAY, LATOURETTE and WARNER, Justices.

BRAND, Acting Chief Justice.

Plaintiff, a guest, sued the defendant hotel companies for damages when a counter stool on which he was sitting broke, casting him to the floor. There was a verdict for the plaintiff. Upon motion of the defendants, however, judgment was entered for the defendants, notwithstanding the verdict. The plaintiff appeals.

The complaint alleges that plaintiff was seated at the invitation of defendants, upon a stool at the counter, which was negligently maintained in a defective and hazardous condition, and that as the plaintiff was rising from said stool, it broke and precipitated plaintiff to the floor. The complaint specifies the particulars of the alleged negligence, i. e., that in the exercise of reasonable diligence, defendants should have known that the stool was breaking loose from its fastenings; that the condition was not apparent to persons about to sit upon it; that there was a failure to provide adequate fastenings; that defendants represented that the stool was safe to sit upon; and that they failed to provide a

---

* Bailey, J., retired November 15, 1950.

safe place for plaintiff. Then follows the allegation of damage. Defendants filed a joint answer denying negligence and alleging contributory negligence which was denied in the reply.

Defendants cite: *Lee v. Meier & Frank Co.*, 166 Or. 600, 114 P. 2d 136; *Starberg v. Olbekson*, 169 Or. 369, 129 P. 2d 62; *Dougherty v. Arcade Hotel*, 170 Or. 374, 134 P. 2d 118. From defendants' brief we quote the following:

> "* * * Appellant cites these same cases in his brief, indicating that the extent of the duty owed is not in question and is not an issue in this appeal. The question in this regard then is, solely, whether or not there is any competent evidence indicating that Respondents did not discharge the duty of reasonable care. * * *"

■ From the authorities cited by both parties, we learn the familiar rule concerning the duty of the defendants. They were not insurers, but did have a duty to exercise reasonable care, "such care in the maintenance of its * * * fixtures that plaintiff could use them in the ordinary way without danger." *Doherty v. Arcade Hotel,* supra. Stated differently:

> "The principle which is applicable to the inquiry is thus stated by § 307, Restatement of the Law, Negligence:
> "'It is negligence to use an instrumentality, whether a human being or thing, which the actor knows or should know to be so incompetent, inappropriate, or defective, that its use involves an unreasonable risk of harm to others.'" *Doherty v. Arcade Hotel,* supra.

■■ Applying the "knows or should know" portion of the rule, it has been held that opportunity by the exercise of reasonable diligence to acquire knowledge of a

peril is equivalent to a knowledge of the peril. *Starberg v. Olbekson,* supra. This rule is the basis on which rests the duty of reasonable diligence in inspection. Restatement, Torts, Vol. 2, § 343, and comments; and section 365. The duty of reasonable care to keep the premises safe applies, not only to apparent dangers, but also to hidden or lurking dangers. *Starberg v. Olbekson,* supra.

In determining the issue presented by the motions for nonsuit and directed verdict, we will first consider the applicability of the doctrine of res ipsa loquitur. Defendants contend that it is ''incongruous to plead specific acts on one hand and on the other hand rely on this doctrine.'' In *Doherty v. Arcade Hotel,* supra, the plaintiff pleaded specific acts of negligence and also relied on res ipsa liquitur. The court considered plaintiff's contention that the doctrine applied and rejected it, but not because specific negligence had been pleaded.

In *Suko v. Northwestern Ice & Cold Storage Co., et al.,* 166 Or. 557, 113 P. 2d 209, this court ruled directly on the point. We quote:

''The fact that the plaintiff in his complaint charged the defendant with specific acts of negligence does not deprive him of the benefit of the doctrine of res ipsa loquitur, so far as concerns the acts alleged * * *.'' Citing cases.

In *Applegate v. Portland Gas & Coke Co.,* 142 Or. 66, 18 P. 2d 211, plaintiff alleged specific acts of negligence. This court said:

''Since plaintiff was in control of the premises upon which the meter in question was located and the plaintiff has undertaken specifically to point out the cause of the leakage, the doctrine of res ipsa loquitur has no application * * *.''

If this statement is to be taken as meaning that res ipsa loquitur is not available where specific negligence has been alleged, then the case is to that extent overruled by the Suko case, supra, and by *Carlson v. Wheeler-Hallock Co.*, 171 Or. 349, 137 P. 2d 1001. See also Prosser, Res Ipsa Loquitur in California, 37 Cal. L. Rev. 214, et seq. In the case at bar negligence was alleged both generally and specifically.

In their brief the defendants describe the manner in which the stool was affixed to the floor as follows:

"* * * The floor in the Coffee Shop is concrete and a hole was drilled into the concrete into which hole an expansion shield was imbedded. The stool base is one piece with a flat bottom which rests flush on the floor with a tubular standard about 19 inches high, and this was placed directly over the hole in the concrete and the expansion shield. Then a lag bolt, of standard size, was inserted into the shaft of the stool base down through a hole at the bottom, the hole being cast into the base itself; thence, into the expansion shield by means of a special long socket-wrench which was inserted down through the base, fitted over the head of the lag bolt, and twisted by means of a crescent wrench affixed to the end protruding out of the base. As the lag bolt was tightened with this wrench the shield expanded into the concrete, and the head of the lag bolt pulled the stool base onto the concrete holding it tight in position. * * *"

The plaintiff testified that the defendants' hostess showed him the seat in the restaurant; that he noticed nothing unusual about it; sat down and ate his luncheon. He testified further:

"A. * * * I had my hand on the counter to try and turn the swivel seat around so I could get out sideways without disturbing people on each side of me, and I got part way around, I guess, and the

next thing I knew I was laying on the floor. The seat had broken loose and I went right over with the stool and the chair. * * *''

There is no evidence to the contrary.

■ Although there have been some modern accretions, the essence of the doctrine known as res ipsa loquitur has never been better stated than in its first formulation in 1865. The court said:

"There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." 3 H. & C. 596, 159 Eng. Rep. 665.

The modern statement of the doctrine frequently follows the formulation by Wigmore:

"What the final accepted shape of the rule will be can hardly be predicted. But the following considerations ought to limit it: (1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. * * *." Wigmore on Evidence, Vol. 9, 3d Ed., § 2509, p. 380.

The learned author refers to the rule as a "presumption", meaning, undoubtedly, a presumption of law. 9 Wigmore, 3d Ed., § 2491. But it must be remembered that the Wigmore theory as to the nature and effect of presumptions has been rejected by this court

in *Wyckoff v. Mutual Life Ins. Co.*, 173 Or. 592, 147 P. 2d 227, where the question was exhaustively considered in the light of Oregon statutes concerning inferences and presumptions. In saying that res ipsa loquitur raises a presumption, Wigmore was not referring to presumptions as defined by Oregon statute and construed in the Wyckoff case. In any event, as indicated in *Ritchie v. Thomas et al.*, handed down of even date herewith, this court is committed to the proposition that res ipsa loquitur simply specifies certain facts or circumstances which, when found in combination, raise an inference of negligence. As said in *Dunning v. Northwestern Electric Co.*, 186 Or. 379, 199 P. 2d 648, 206 P. 2d 1177:

> "* * * That rule [res ipsa loquitur] is merely a process of common sense reasoning. It assists in drawing logical inferences from circumstantial evidence which has been presented in negligence cases. * * * There is nothing artificial about the rule. It favors neither party with any make-weights—as, for instance, presumptions—that were coined in the mints of lawmakers. It gives to circumstantial evidence in negligence cases its real value, nothing more and nothing less. * * *"

■ The rule, when applicable, gives rise to an inference of negligence permissible but not mandatory, which carries the plaintiff's case past a nonsuit.

The defendants cite *Dunning v. Northwestern Electric Co.*, supra, wherein the Wigmore rule was succinctly summarized as follows:

> "* * * Res ipsa Loquitur deems as satisfactory circumstances from which an inference of negligence may safely be drawn proof showing (1) the injury, (2) exclusive possession of the injury-inflicting instrumentality by the alleged tort feasor, (3) nonparticipation by the victim, and (4) the fact

that when due care is exercised the instrumentality injures no one.   \*   \*   \*''

Under the ''inference'' theory, it follows that in any. case which is dependent on the doctrine of res ipsa loquitur to carry the case to the jury, the applicability of the doctrine must be determined by the trial court at the close of plaintiff's case, when the sufficiency of the evidence is challenged by motion for nonsuit. If at that time, the evidence eliminates the plaintiff as the responsible cause of the accident, and if the other requirements of the rule are satisfied, then the court must deny the motion for nonsuit and the rule will have served its purpose notwithstanding the fact that defendant in his case may present evidence tending to implicate plaintiff as a causal factor in the mishap. The question of liability would still be one for the jury under proper instructions except perhaps in event of evidence so conclusive as to require the application of the rule in *Judson v. Bee Hive Auto Service Co.,* 136 Or. 1, 294 P. 588, 297 P. 1050. But see *Gillilan v. Portland Crematorium Assn.,* 120 Or. 286, 249 P. 627, and *In re Estate of Thornburg,* 186 Or. 570, 208 P. 2d 349. The difficulty which the courts have experienced is not with the general formulation of the rule but with the interpretation of certain phrases in the rule, such as ''control of the party charged'' as used by Wigmore, ''exclusive possession'', *''irrespective* of any voluntary action'' by the party injured, ''nonparticipation'' by the victim, and like phrases. It is to be observed that Wigmore does not employ the expression ''exclusive control'', much less does he employ ''exclusive possession''. Wigmore on Evidence, 3d Ed., § 2509. And as to ''nonparticipation'' by plaintiff, it is significant that he does not say that there must be no voluntary action

by plaintiff but only that the injury must have happened "irrespective of any voluntary action" by the plaintiff. In this connection we quote from a note by the editors in 169. A.L.R. 966, citing many cases and commenting as follows:

"As will be observed, the third limitation mentioned by the learned author envisages a relationship toward the injurious instrumentality on the part of the injured person which does not necessarily imply his control or management thereof. The res ipsa rule, in other words, should be denied application in a particular case if the injury did not happen 'irrespective' of some voluntary action taken by the injured person with respect to the agency or instrumentality out of which the injury arose. This language is extremely broad. If, for example, an excessive voltage was introduced into the electric wiring system of a dwelling house by the negligence of a power company, and a guest of the householder was electrocuted when he flipped a light switch, it would seem clear that, under a literal interpretation of the words of the limitation, the res ipsa doctrine could not be invoked, since it is obvious that if the injured person had not undertaken the voluntary action of turning the switch, the injury would not have occurred. This is an extremely undesirable result, and it is highly doubtful if Mr. Wigmore intended any such interpretation to be put upon his proposition."

The contention of the defendant is, that res ipsa loquitur does not apply in the case at bar because there was "no exclusive possession of the stool" by the defendant and because "the victim participated." The general rule quoted has proven a safe guide in most cases, but it cannot always be applied as a rule of thumb. When applied in the case of a passenger injured in a railroad wreck, or a pedestrian struck by a falling object, it would, of course, be clear that the

defendant had exclusive control and that the plaintiff did not participate, except by being present at the wrong time and place, but a literal application in all cases of the requirement of exclusive possession by the defendant and nonparticipation by the plaintiff would deprive the rule of its beneficial effect in many cases, and consequently would deprive the jury of the right to consider substantial circumstantial evidence in a common-sense way. The case of *Kilgore v. The Shepard Co.*, 52 R. I. 151, 158 A. 720, offers an apt illustration of the manner in which the rules concerning res ipsa loquitur have sometimes been misapplied and the logical basis of the rule obscured by technical reasoning. Concerning that case, Dean Prosser writes:

> "* * * The strict and literal application of Wigmore's formula has led to such absurd results as the Rhode Island case in which, in the defendant's department store, the plaintiff sat down in a chair that collapsed, and a directed verdict for the defendant was affirmed upon the ground that both 'user' and 'control' of the chair were in the plaintiff 'at the time of the injury.' '' Res Ipsa Loquitur in California, 37 Cal. L. Rev. 183 at 188.

In *Herries v. Bond Stores, Inc.*, 231 Mo. App. 1053, 84 S. W. 2d 153, the plaintiff, an invitee, entered the defendant's store and sat down in a chair which immediately collapsed. She made no previous examination of the chair. There was a verdict for the defendant. The court granted the plaintiff a new trial. The defendant appealed, contending that res ipsa loquitur did not apply and there was therefore no evidence of negligence. Defendant relied upon the Kilgore case, supra. The court said:

> "* * * An examination of authorities in other jurisdictions will demonstrate that the Kilgore Case,

supra, is out of line with the general current of authorities.

"* * *

"There certainly cannot be any evidence in the instant case that plaintiff did anything or could have done anything to cause the accident other than to sit down in the chair when invited by defendant's salesman so to do. Its immediate collapse under her normal weight of 126 pounds was a most unusual, extraordinary, and unexpected debacle.

"What more natural, what more in consonance with sound reason, and sound common sense, than to attribute the defective condition of the chair, which surely must have existed, to defendant, the owner and custodian of the chair?

"The plaintiff was the innocent, unsuspecting confiding victim and by no stretch of the imagination could she be charged with any dereliction of duty in bringing about the collapse of the chair. Defendant had the ownership, management, and control of the chair, and had full opportunity to inspect the chair and ascertain its actual defective condition, and had it fulfilled its duty it would not have allowed it to become in such a defective condition that it would have injured one of its customers who was invited to sit in it.

"These inferences are unavoidable to the normal mind. So that when plaintiff proved the facts, i. e., that she was a customer, that she was an invitee of defendant's agent, who furnished her the chair to sit in, that she sat down in it, and that it immediately collapsed throwing her to the floor and injuring her, she certainly made a prima facie case, and it was then up to defendant to explain in order to escape liability."

In *Herries v. Bond Stores, Inc.*, supra, the court had the following to say concerning the case of *Rost v. Kee & Chapell Dairy Co.*, 216 Ill. App. 497. We quote:

"In Rost v. Kee & Chapell Dairy Company, 216 Ill. App. 497, the salient facts are as follows:

"Plaintiff was a patron of a dairy company and drank from a bottle of milk furnished by it and swallowed some small sharp jagged pieces of glass and was injured thereby. Her recovery in the lower court was affirmed in the appellate court, one judge dissenting, but certiorari was later denied by the Illinois Supreme Court, thus making the majority opinion final.

"The majority opinion holds that it cannot be said with reason that any one other than the defendant was to blame; that absolute, positive, ocular proof the law, wisely, does not require; that negligence does not have to be proven beyond a reasonable doubt; that circumstantial evidence is sufficient; that res ipsa loquitur is ancient law; that it merely connotes a principle of evidence and generally means inferences we draw from knowledge we obtain through our senses, i. e., common sense applied to physical things; that the fact that the thing causing the injury being in plaintiff's possession at the time of the reception of the injury was not important or material, it having been delivered to plaintiff by defendant with the intent that its contents should be drunk and consumed."

In the Rost case the plaintiff certainly had a momentary manual possession of the bottle of milk and certainly "the victim participated". Yet, it was held that res ipsa loquitur. To have held otherwise, would, we think, have been ridiculous in such a case.

In the following cases it was held that the rule of res ipsa loquitur applied when the plaintiff, an invitee on the defendant's premises sat down in a chair which collapsed: *Fox v. The Bronx Amusement Co.,* 9 Ohio App. 426; *Moore v. Claggett,* 48 App. D. C. 410; *Larrabee v. Des Moines Tent & Awning Co.,* 189 Iowa 319, 178 N. W. 373; *Clark-Daniel's, Inc. v. Deathe,* Tex. Civ. App. (1939), 131 S. W. 2d 1091; (in this case the hold-

ing in *Kilgore v. Shepard Co.,* supra, was considered and rejected) ; *Robinson v. Peoples Gas Light & Coke Co.,* 327 Ill. App. 412, 64 N. E. 2d 556 ; *Gross v. Fox Ritz Theatre Corp.,* 12 Cal. Appeals 2d 255, 55 P. 2d 227 ; *Sasso et al. v. Randforce Amusement Corp.,* 243 App. Div. 522, 275 N. Y. Supp. 891 ; *Zappala v. Stanley Co. of America,* 124 N. J. L. 569, 12 A. 2d 691.

The United States Supreme Court recently gave attention to the entire problem concerning the effect of participation by the plaintiff on the applicability of the doctrine of res ipsa loquitur. In *Jesionowski v. Boston & Maine Railroad,* 329 U. S. 452, 91 L. Ed. 416, a brakeman was killed when cars were derailed. Plaintiff's testimony showed that the deceased brakeman had performed his duties properly in throwing the switch. Plaintiff relied on res ipsa loquitur. The defendant presented evidence that the deceased had negligently thrown the switch in a manner causing the derailment. Verdict went for the plaintiff, but the Circuit Court of Appeals reversed, being of the opinion that res ipsa loquitur could not apply. Concerning the reasoning of the Circuit Court of Appeals the Supreme Court said:

" 'Exclusive control' of all probable causative factors, the court reasoned, means that res ipsa loquitur cannot be applied even though those non-exclusively controlled factors are clearly shown to have had no causal connection with the accident.

"We cannot agree. Res ipsa loquitur, thus applied, would bar juries from drawing an inference of negligence on account of unusual accidents in all operations where the injured person had himself participated in the operations, even though it was proved that his operations of the things under his control did not cause the accident. This viewpoint unduly restricts the power of juries to decide questions of fact, and in this case the jury's right to

draw inferences from evidence and the sufficiency of that evidence to support a verdict are federal questions. A conceptualistic interpretation of res ipsa loquitur has never been used by this Court to reduce the jury's power to draw inferences from facts. Such an interpretation unduly narrows the doctrine as this Court has applied it.'' 329 U. S. 452, 91 L. Ed. 420.

The case was approved and followed in *Johnson v. U. S.,* 333 U. S. 46, 92 L. Ed. 468.

■ Summarizing our conclusions on this aspect of the case, we again quote from Dean Prosser:

''It is obvious that the inference of negligence does not point to the defendant until the plaintiff himself has been eliminated as a cause. The mere fact that a man falls down is no evidence of anyone's fault but his own, and it is still true when he falls down while on a street car. When he gets his clothing caught in machinery, or a heavy door falls on him while he is shaking it, there is no inference against anyone else.

''However, the Rhode Island court to the contrary notwithstanding, the plaintiff's mere possession of a chattel which injures him does not prevent a res ipsa case where it is made clear that he has done nothing abnormal and has used the thing only for the purpose for which it was intended. The plaintiff need only tell enough of what he did and how the accident happened to permit the conclusion that the fault was not his. Again he has the burden of proof by a mere preponderance of the evidence; and even though the question of his own contribution is left in doubt, res ipsa loquitur may still be applied under proper instructions to the jury.'' Res Ipsa Loquitur in California, Prosser, Cal. L. Rev. 183 at 201.

In the case at bar our attention has not been called to any evidence tending to show that the plaintiff used

the stool in any manner or for any purpose other than that for which it was intended.

This court has frequently repeated and applied the so-called Wigmore formula concerning res ipsa loquitur with satisfactory results, but this and other courts have also applied the doctrine of res ipsa loquitur to cases in which the "victim participated"; that is, where the plaintiff took voluntary action with regard to the instrumentality involved in the mishap, though such action was of course not the legal cause of the mishap. These are cases in which the defendant had general responsibility and general control and supervision, but where the plaintiff had some temporary occupancy or custody of the instrumentality causing the injury, or where contributory negligence had been raised as an issue in defendant's case.

In *Boyd v. Portland Electric Co.*, 40 Or. 126, 66 P. 576, the opinion was by Chief Justice Robert S. BEAN. A boy was found lying on the ground immediately under a broken wire carrying electricity of high voltage. His right hand was badly burned. He was unconscious. There were no witnesses, and the boy had no recollection of the event. The defendant put in evidence its use of standard equipment and also asserted contributory negligence. In this case there was surely some evidence of voluntary action or participation by the boy, manifested by his burned hand. Yet, res ipsa loquitur was held to apply and to establish a prima facie case of negligence. The same facts were involved in subsequent litigation, and it was held in an opinion by WOLVERTON, J., that res ipsa loquitur was applicable. *Boyd v. Portland Electric Co.*, 41 Or. 336, 68 P. 810.

*Richardson v. Portland Trackless Car Co.*, 113 Or. 544, 233 P. 540, was a case of a passenger suing a common carrier. Plaintiff was riding in a crowded street car and there was evidence that he had been leaning against the door. On entering the car the plaintiff had closed the door and he testified that he had latched it. The car lurched; the door flew open and the plaintiff flew out. Defendant produced evidence of the use of standard equipment and of contributory negligence of the plaintiff. Obviously there was voluntary action by the plaintiff concerning the instrumentality in question. This court said:

"* * * Assuming, as we must do, that the testimony of the plaintiff is true, this is a case of res ipsa loquitur. * * *"

The quoted statement of the court is significant. The plaintiff might have been a causative factor in the accident since he was the last person to handle the door, but his case in chief eliminated any causal connection between himself and the accident, and thus carried his case past a nonsuit. After the defendant's evidence had been received, the court submitted the issue of contributory negligence to the jury. It gave no instruction on res ipsa loquitur, but on the contrary told the jury that there was no presumption of negligence from the mere happening of the mishap. This court held on appeal that res ipsa loquitur applied.

In *Budd v. United Carriage Co.*, 25 Or. 314, 35 P. 660, plaintiff's negligence was in issue for the jury, but the res ipsa doctrine was held applicable by this court on appeal.

In *Gillilan v. Portland Crematorium Assn.*, 120 Or. 286, 249 P. 627, it was certainly within the province of the jury to infer that the child had in some way brought

itself into contact with the marble slab which fell, but res ipsa loquitur was held to apply.

The decision in *Eldred v. United Amusement Co., et al.,* 137 Or. 452, 2 P. 2d 1114, throws considerable light as to the kind of exclusive control by the defendant which must be shown in order to make res ipsa loquitur applicable. The defendant company owned an amusement device entitled the "Merry Mix Up". Plaintiff was seated in one of the chairs suspended by wires. A safety chain was fastened in front of the occupant to hold him in his seat. While plaintiff was flying through the air with the greatest of ease, the chain broke and the plaintiff fell out. The court held that contributory negligence was a question for the jury, but it also said:

> "* * * The mere fact that plaintiff occupied a seat during the ride gave him no control over it. In the manner in which he occupied the seat he was simply carrying out the instructions of defendants' operator. * * *"

The case is directly in point. The fact that the plaintiff in the pending case sat down on the restaurant stool at the invitation of the defendant "gave him no control over it. In the manner in which he occupied the seat he was simply carrying out the instructions of defendants' " representative.

In *Carlson v. Wheeler-Hallock,* 171 Or. 349, 137 P. 2d 1001, the court applied a sensible and non-technical definition of exclusive control. This was an action under the Jones Act for injury sustained when a roll of paper was thrown upon the plaintiff. There was a verdict for the plaintiff but the trial court entered judgment for the defendant notwithstanding the verdict. This court reversed. Specific acts of negligence were alleged. The plaintiff was one of four men who

were needed to operate a two-wheel truck carrying heavy rolls of paper to the place in the hold of a ship where they were to be stored. The skid board on which the truck was being wheeled broke, causing the truck to tip sideways, throwing the heavy roll of paper on the plaintiff. Defendant claimed contributory negligence by the plaintiff. It was held that plaintiff's case was dependent upon the doctrine of res ipsa loquitur and that doctrine was applied.

In *Hotel Dempsey Co. v. Teel*, 128 F. 2d 673 (C. C. A. 5th, 1942) the plaintiff, a hotel guest, pulled the cord attached to the window shade, whereupon the shade and roll fell upon her. She was not negligent, but she did voluntarily participate. The Court of Appeals held that res ipsa loquitur applied. For other cases supporting the view espoused here, see: *Prosser*, 37 Cal. L. Rev., 196 to 201; *Denver City Tramway Co. v. Hills,* 50 Colo. 328, 116 P. 125; *Billroy's Comedians v. Sweeny,* 238 Ky. 277, 37 S. W. 2d 43; *Delaware & H. Co. v. Dix,* 188 F. 901; *Lyttle v. Denny,* 222 Pa. 395, 71 A. 841; *Tamres v. Reed,* 109 Pa. Super. R. 28, 165 A. 538; *Kirby v. Moehlman,* 182 Va. 876, 30 S. E. 2d 548; *Lawson v. Clawson,* 177 Md. 333, 9 A. 2d 755; *Miratsky v. Beseda,* 139 Neb. 229, 297 N. W. 94; *Reinzi v. Tilyou,* 252 N. Y. 97, 169 N. E. 101.

The case of *Doherty v. Arcade Hotel Co.,* supra, is distinguishable on the facts. In that case the plaintiff, as a paying guest, had rented a room in the defendant's hotel. While he was attempting to shut off the hot water faucet over the wash bowl, the porcelain handle broke and cut his hand. The court said: "The plaintiff is not entitled to a *presumption* that the defendant was negligent." It was held that res ipsa loquitur did not apply in that case. The room was in the sole occu-

pancy of the plaintiff and the entire instrumentality which broke was in his hand. We think the decision was a close one, but it followed what was found to be the weight of authority in that identical type of cases and the decision in the Doherty case preceded in point of time the careful discussion of the "inference" theory in *Dunning v. Northwestern Electric Co.,* supra.

■ In the case at bar, the plaintiff had a temporary occupancy of the stool on which he sat, but the base mechanism which fastened the post on which the stool rested, to the concrete floor, was certainly not in plaintiff's control and was under the exclusive responsible control of the defendants. True, the lag bolt would not have broken if no one had touched the chair, but since the evidence excluded the plaintiff as the responsible cause, it may be fairly said that there was an inference of negligence on the part of the defendants when the bolt broke as plaintiff attempted to rise from the stool.

We have read the evidence, and in view of Oregon Constitution, Article VII, Section 3, we cannot say in this case that the inference of fact was dispelled as a matter of law. The issue of negligence was properly submitted to the jury. Since the jury considered all of the evidence and then returned their verdict for the plaintiff, we hold that the court erred in granting judgment non obstante for the defendant. The judgment for the defendant is set aside and the cause is remanded with the directions to enter a judgment for the plaintiff upon the verdict.

66

*James K. Buell,* of Portland; Harold A. Seering, of Seattle, Washington, and Griffith, Peck, Phillips & Coughlin, of Portland, for appellant, for the motion.

*James Arthur Powers;* Veazie, Powers & Veazie, and Claude M. Johns, Jr., all of Portland, for the respondents, contra.

BRAND, C. J.

The plaintiff has filed a motion for the recall of the mandate heretofore issued by this court in the above-entitled cause and for the issuance of an amended mandate directing the trial court to enter judgment in favor of the plaintiff on the verdict nunc pro tunc as of 23 September 1948 with legal interest thereon until paid.

This was an action for damages for negligent tort. At the close of the testimony the defendants moved for directed verdict. Under the authority of O.C.L.A., § 6-707 as amended by Oregon Laws 1945, chapter 149, the trial court submitted the case to the jury, but with leave to the defendants to move for judgment notwithstanding the verdict if the jury should return a verdict in favor of the plaintiff. On 23 September 1948 the jury returned a verdict for the plaintiff in the sum of $7,175. On 24 September 1948 the defendants filed their motion for judgment n. o. v. and on 18 October 1948 the court entered judgment in favor of the defendants, notwithstanding the verdict of the jury. The statute, under the provisions of which the court acted, provides in part as follows:

"* * * when a motion for a directed verdict which should have been granted has been refused and a verdict is rendered against the applicant the court may, on motion, render a judgment notwith-

standing the verdict, or set aside any judgment which may have been entered and render another judgment, as the case may require. In any case where, in the opinion of the court, a motion for a directed verdict ought to be granted, it may nevertheless, at the request of the adverse party, submit the case to the jury with leave to the moving party to move for judgment in his favor if the verdict is otherwise than as would have been directed." Oregon Laws, 1945, ch. 149.

In the instant case the judgment n. o. v. for defendant was the first and only one entered in the case, no judgment on the verdict for the plaintiff having ever been made or entered.

■ Upon appeal to this court, we held that the trial court erred in granting judgment for the defendants and remanded the cause to the circuit court with directions to enter judgment for the plaintiff upon the verdict. The case was decided by this court on 28 November 1950. On 8 February 1951 the plaintiff filed its petition to recall mandate as above stated. The mandate heretofore issued was, on 21 February 1951, recalled by order of this court. The court had jurisdiction to recall the mandate. *Rodda v. Rodda,* 185 Or. 140, 209, 200 P. 2d 616, 202 P. 2d 638.

Now, having jurisdiction of the cause, we will consider the question presented. The plaintiff contends that he is entitled to a judgment nunc pro tunc as of 23 September 1948, for the amount fixed in the verdict, with interest thereon from that date, and that under the mandate heretofore issued, interest would not commence to run until judgment was entered in the circuit court, pursuant to the mandate issued in accordance with our opinion of 28 November 1950. The defendant contends that tort claims do not bear interest until reduced to judgment and that there was no judgment

for plaintiff and could be none until one was entered in the circuit court pursuant to the mandate of this court, which was some two years after the return of the verdict. The statute provides:

"The rate of interest in this state shall be six per centum per annum and no more, and shall be payable in the following cases, to wit:

" *  *  *

"On judgments and decrees for the payment of money from the date of the entry thereof unless some other date is specified in said judgment or decree." O.C.L.A., § 66-101.

The plaintiff relies upon the statute which provides in part as follows:

" *  *  * If the trial be by jury, judgment shall be given by the court in conformity with the verdict and so entered by the clerk within the day on which the verdict is returned. O.C.L.A., § 6-706.

█ The provision is only directory. *Fuller v. Blanc,* 160 Or. 50, 77 P. 2d 440, 83 P. 2d 434. It is true that the statute provides that judgments shall be entered by the clerk, but:

"In the entry of all judgments, except judgments by default for want of an answer, the clerk shall be subject to the direction of the court." O.C.L.A., § 6-701.

█ And, as provided in O.C.L.A., § 6-706, supra, judgment is to be "given by the court" and "entered by the clerk". It need scarcely be said that the clerk has no power to enter judgment on a verdict for the plaintiff, when, as here, the court has indicated an intention to give judgment for the defendants and has thereafter entered such a judgment n. o. v.

The plaintiff's chief reliance is on *Compton v. Hammond Lumber Co.,* 154 Or. 650, 61 P. 2d 1257. In that

case judgment for the plaintiff was entered by the trial court upon the first cause of action, for $700 damages. This court reversed the judgment and remanded the case for a new trial. *Compton v. Hammond Lumber Co.*, 153 Or. 546, 55 P. 2d 21. On petition for rehearing the judgment awarding a new trial on the first cause of action was reversed and it was held that "a judgment will be rendered in favor of plaintiff and against the defendant in the sum of $700 on the first cause of action * * *." 153 Or. 546, 564, 58 P. 2d 235. The mandate merely directed the trial court to enter judgment for the amount of the verdict. The plaintiff Compton, as in the case at bar, moved for a correction of the mandate so as to provide for interest on the amount of the verdict from the date of the judgment thereon, which had been entered by the trial court. The motion was allowed. The obvious distinction between the two cases is that in the Compton case, interest was requested from the date of the judgment on the verdict, whereas here, interest is requested on the amount of the verdict for which the trial court had never entered judgment. In the Compton case, the court cited O.C.L.A., § 66-101, supra, and very properly corrected the mandate to allow the plaintiff interest on the judgment from the date of its original entry in the circuit court. In so doing, the court did not allow any interest for any period preceding the entry of a judgment and it awarded nothing more than would have been allowed under the interest statute if the original judgment had never been appealed. In so doing, this court did no violence to the rule that no interest can be allowed on an unliquidated claim for damages until it is reduced to judgment. In the Compton case there was a second cause for action for unliquidated damages on which the jury had awarded

$500 to the plaintiff. On the petition for rehearing, this court found that there was an error in the computation of time and that the "testimony supports the verdict and judgment for maintenance in the sum of $300, and no more". The judgment was modified accordingly. On the motion to correct the mandate in the Compton case, this court significantly referred to Article VII, Section 3 of the Oregon constitution, and held that under that provision this court could determine what should be entered in the court below, but the court said: "The amount which was thereby awarded by this court on the second cause of action was for un-liquidated damages and was not determined until the decision of this court was rendered on the petition for rehearing. Therefore, interest on the $300 awarded on the second cause of action should be allowed only from June 2, 1936"—the date of the decision on the petition for rehearing, when, for the first time, the money "became due". See 154 Or. at p. 652. We find nothing in the decision of *Compton v. Hammond Lumber Company* on the motion for modification of the mandate which would authorize the entry of a judgment nunc pro tunc in the case at bar.

*Koontz v. Weide,* 111 Kan. 709, 208 P. 651, is cited by the plaintiff. The case is not in point. The court pointed out that it was not shown whether or not the judgment was announced when the verdict was rendered. The Kansas court held that it was the duty of the clerk to enter judgment on the verdict on the day when rendered and that interest was properly allowed from the date of the verdict. In the case at bar, it was the duty of the clerk not to enter any judgment except the one for the defendant under the orders of the trial court.

In *Potter's Estate,* 154 Or. 167, 59 P. 2d 253, the situation differed materially from that in the case at bar. Sola M. Potter died testate, leaving to her husband certain real property in lieu of curtesy and homestead rights. Thereafter, and in the probate proceedings, the husband renounced the provisions of the will and prayed for an order setting apart to him certain real and personal property as a homestead and as exempt property. The issue was tried, but, before it was decided, the husband died. After the husband's death the trial court made the order and caused it to be entered as of the day the cause was submitted prior to the death. This court held that the nunc pro tunc order was within the inherent power of the court and was proper, although no order had been made during the lifetime of the husband. We think this case involved a nunc pro tunc order only in form. The actual adjudication was, that, as of a date prior to the husband's death, he had taken steps which entitled him to the property as a homestead and that when he died, his right passed to his heirs or representatives. The case is not authority for the contention of the plaintiff in the case at bar.

In *City of Portland v. Blue,* 87 Or. 271, 170 P. 715, a verdict was rendered for the plaintiff, but no judgment was entered. The court cited cases which held that when a confession of judgment is filed and there is an omission of the entry of judgment in the journal, a nunc pro tunc judgment may issue. The court held that the law operated in lieu of formal action by the court as a direction to the clerk to enter judgment. This reasoning cannot be applied to the case at bar. The law did not operate as a direction to the clerk to enter judgment for the plaintiff when the court had ruled

that judgment should be entered for the defendant. The court, in the Blue case, also indulged a presumption that judgment had been rendered and it therefore held that a nunc pro tunc entry was authorized.

In *Sorenson v. Oregon Power Co.*, 47 Or. 24, 82 P. 10, the plaintiff had a verdict for $15,000 which the trial court reduced to $9,450, rendering judgment for that amount only. But, it also awarded interest on the reduced amount from the date of the verdict to the date of the judgment. On appeal this court said:

"The court was in error, however, in allowing interest on the verdict from its date to the rendition of judgment. In the absence of a contract to pay interest, the right to exact it must be found in the statute (Rensselaer Glass Factory v. Reid, 5 Cow. 608), and the statute makes no provision for interest on unliquidated damages arising out of a tort until made certain by judgment:   *    *    *"

The plaintiff calls attention to the fact that the interest statute before 1917 provided for interest "on all moneys after the same becomes due; on judgments and decrees for the payment of money   *    *    *", L.O.L., § 6028, and that in the year 1917 the interest statute was amended by adding after the words "for the payment of money", the words "from the date of the entry thereof unless some other date is specified in said judgment or decree." O.C.L.A., § 66-101.

The interest statute as it existed prior to the 1917 amendment received its authoritative construction in the case of *Sargent v. American Bank and Trust Co.*, 80 Or. 18 at p. 45, 154 P. 759, 156 P. 431. In that case a semicolon was disregarded and it was held that interest was allowable "on all moneys after the same becomes due on judgments and decrees   *    *    *". The plaintiff contends that the amendment indicated dis-

satisfaction of the legislature with the previous construction of the statute, and, by inference, he contends that the rule quoted from the Sorenson case is no longer the law. The amendment did indicate an intention to change the statute, but it had no effect upon the rule stated in the Sorenson case.

In *Calcagno v. Holcomb*, 181 Or. 603, 185 P. 2d 251, this court said:

"* * * Such damages, if any, would be unliquidated and would be due to the tortious act of the defendant. For that reason plaintiff would not be entitled to any interest thereon prior to judgment. § 66-101, O.C.L.A.,; Sorenson v. Oregon Power Co., 47 Or. 24, 82 P. 10; Richardson v. Investment Co., 66 Or. 353, 133 P. 773. The rule laid down in Public Market Co. v. Portland, 171 Or. 522, 623, 130 P. (2d) 624, 138 P. (2d) 916, was never intended to apply to tort actions for unliquidated damages. * * *"

The change in the interest statute provided, first, that, in general, interest commences to run from the date of entry of judgment. The second change authorizes the court to specify in the judgment or decree some other date from which interest should run. Under the amended statute, if the court pronounced a judgment which was not then entered by the clerk, the court might order the entry of judgment as of the date when it was pronounced. In view of the decision in *Calcagno v. Holcomb*, supra, it is clear that the amendment to the interest statute was not intended to authorize interest from a date previous to the rendition of judgment by the court. We agree with the contention of the plaintiff only to this extent; that the amended statute does indicate a legislative intent that the actual date of the ministerial entry of judgment or de-

cree would not be controlling if the court had in fact pronounced judgment previous to its entry. In its application to cases involving actions for unliquidated damages, the interest statute confers no authority upon the trial court to award interest from the date of a verdict prior to the rendition of judgment by the court. As said in *Estate of Gerhardus,* 116 Or. 113, 239 P. 829:

> "* * * There is a marked distinction between the rendition and entry of a judgment or order. One is the judicial act of the court, while the other is the ministerial act of the clerk * * *."

We adhere to the rule announced in *Ryan's Estate,* 84 Or. 102, 164 P. 586, that "The sole purpose of a *nunc pro tunc* order is to make the record speak the truth, never to falsify it." To the same effect see *Grover v. Hawthorne,* 62 Or. 65, 116 P. 100, 121 P. 804, and *Roeser v. Roeser,* 116 Or. 108, 239 P. 541. We conclude that in actions of this kind, a nunc pro tunc order should be made only to make the record conform to fact and therefore this device is not available in the pending case.

However, this court is not powerless to do justice under the circumstances here presented. The remedy is suggested in *Compton v. Hammond Lumber Co.,* supra, where the court cited Article VII, Section 3 of the constitution, which provides in part:

> "* * * if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court * * *." Constitution of Oregon, Art. VII, § 3, p. 224.

In the principal case we held that the trial court erred in granting judgment for the defendant n. o. v., which is to say, that the trial court should have entered judgment on the verdict in favor of the plaintiff. In this case the claim for unliquidated damages had been liquidated by the verdict of the jury. We are therefore of the opinion that this court, under its constitutional power, can "determine what judgment should have been entered in the court below" and that we should direct such judgment to be entered. If the trial court had entered judgment for the plaintiff on the verdict and had then set it aside and had granted judgment n. o. v. for the defendant, and we had reversed the latter judgment, we would have no difficulty in applying the analogous procedure adopted by this court in passing on the motion for modification of the mandate as to the first cause of action in the Hammond case. The fact that the trial court followed a procedure slightly different in form should not deprive the plaintiff of his substantial rights. The constitution authorizes us, in the interest of justice, to award to plaintiff the substance of the relief requested, though not in the form requested. Because of the importance of the question and its novelty, we have gone to some pains to point out that this decision is based upon the constitutional power under Article VII, § 3, and is not based upon any alleged common law right to enter judgment nunc pro tunc when no judgment had ever been pronounced tunc. The results under the constitution may be similar, but the road traversed is a less tortuous one.

It is adjudged and decreed that the plaintiff have judgment for $7,175, together with interest thereon at 6 per cent per annum from 23 September 1948.