Argued June 7, reversed and remanded October 16, 1968

MATHISON, *Appellant, v.* NEWTON ET AL, *Respondents.*

446 P. 2d 94

*Gerald R. Pullen,* Portland, argued the cause for appellant. With him on the brief was Lowell D. Njust.

*Pat Dooley,* Portland, argued the cause and filed a brief for respondents.

Before Sloan, Presiding Justice, and Goodwin, Denecke, Holman and Lusk, Justices.

LUSK, J.

This is a personal injury action in which the plain-

tiff appeals from a judgment for the defendants pursuant to a directed verdict.

Plaintiff was injured as the result of a fall into a sidewalk elevator shaft in the City of Portland. The defendants are W. D. Newton, doing business as Business Equipment Bureau, tenant of a building on abutting property for whose use in receiving and shipping merchandise the elevator was maintained, and Newton's landlord, Morrison Twelveth, Inc., a corporation. On this appeal the ruling as to Morrison Twelveth, Inc., is not challenged and our only question is whether the evidence is sufficient to have required submission to the jury of the case against Newton (hereinafter referred to as the defendant).

The elevator was located on the east side of Thirteenth Avenue between Morrison and Alder Streets. The opening, parallel with the street, was eleven feet in length and had two steel or iron doors, each about five and one-half feet high when upright. The distance between the opening on the street side and the street is not shown by measurement, but, from photographs in evidence and the plaintiff's testimony, appears to have been not more than one and one-half or two feet.

On May 13, 1963, plaintiff, accompanied by two friends, Mrs. Heard and Mrs. Hickey, drove to Portland from her home in Seaside and parked her car, headed south, along the curb in a loading zone adjacent to the elevator. The doors of the elevator shaft were upright. Plaintiff and Mrs. Heard got out of the car to take some packages to a nearby club. At about the same time a truck carrying merchandise for delivery to Newton by means of the elevator, drove up and double-parked a short distance to the rear of plaintiff's car. While plaintiff and Mrs. Heard were gone a car which had been parked ahead of plain-

tiff's pulled out, and Mrs. Hickey got into the driver's seat of plaintiff's car and undertook to move it forward to the vacated space in order to free the loading zone. Mrs. Hickey was not familiar with the gearshift mechanism of the car and put it into reverse instead of forward gear. In the meantime the plaintiff and Mrs. Heard had returned and the plaintiff was standing on the curb (whether immediately opposite the elevator opening or a short distance south of it is not clear) as her car commenced to move toward her. The left front door of the car was open and there was danger that plaintiff would be struck by it. Plaintiff testified that after returning she found Mrs. Hickey in the front seat with the motor going and her testimony continued:

"Q  All right, what happened?  What did you do or what took place?

"A  Well, she opened the door for me and slid over.

"Q  And then what happened?

"A  Well, I noticed the car was in reverse, on 'R'.

"Q  Is this an automatic shift?

"A  Yes, it is.

"Q  All right. And what happened then?

"A  Well, then she thought—well, she just reached over—tall, long legged—she just reached over and put her foot—

"Q  Just a minute. Was the car rolling or standing still?

"A  It was on a slight hill and the car was rolling very slightly because there was no brake on.

"Q  Was it rolling backwards or forwards?

"A  Backwards.

"Q  Then what happened? You mentioned her foot.

"A  Then she reached over with her foot,

thought she was putting it on the brake and she put it on the gas.

"Q What were you doing during this time?
"A I was on the curb.

"Q Were you doing anything?
"A No.

"Q Well, was the car rolling backwards?
"A It was slightly rolling backwards. I didn't wish to step in the car while it was rolling.

"Q What did you do then?
"A I stepped out of the way.

"Q Did you walk back with the car?
"A Backwards with the car.

"Q Did you see her foot hit the gas pedal?
"A I see her foot coming over there and I stepped away.

"Q Why did you do this?
"A I didn't want the door to hit me.

"Q Did you step back?
"A I stepped back and looked around to see where I was going with my left foot.

"Q Did you step on anything?
"A I had a pair of white shoes on and I stepped on something brown.

"Q All right. Then what happened?
"A That is the last I remember."

What the plaintiff stepped on was a metal grating which covered the elevator shaft. The grating gave way beneath her weight and she fell to the elevator platform some twelve feet below.

Plaintiff alleged in her complaint that defendant was negligent in failing to have a mesh grating over the elevator opening sufficiently strong to hold the weight of a person safely; in having a grating which was structurally defective; and in failing to have a

steel bar in place across the elevator as required by Portland City Ordinance 108862.① The ordinance, so far as material, reads:

"* * * Sidewalk doors shall be provided with a metal guard, which, when the doors are open, will hold the doors open. This guard shall be located on the side of the sidewalk nearest to the property line. The guard shall be made in the form of a grating with openings not exceeding 8 inches in dimension and so arranged that a child cannot get under or through the guard. This guard shall not be required for sidewalk doors having metal gratings which are level with the sidewalk when the sidewalk doors are open and the elevator platform is below the sidewalk level. Such gratings shall be strong enough to support the weight of a person safely. Elevators having these sidewalk gratings shall be provided with a metal bar to hold the sidewalk doors open."

■■ As we interpret the complaint, the allegations with respect to the defective grating over the elevator opening charged both violation of the ordinance and common law negligence and would admit proof of

---

① After setting out the ordinance in full the complaint alleges that the defendant was negligent:

"1. In failing to have a mesh grating over the open elevator hole sufficiently strong to hold the weight of a person safely.

"2. In having defects in the elevator grating in that the grating was of insufficient structural quality, was weakened as a result of deterioration due to aging, was composed of too wide of grating openings for good structural strength, and was improperly constructed and supported at the corner joints so as to be extremely dangerous for anyone placing his weight thereon.

* * * * *

"4. In failing to have a steel bar in place across the elevator as required by the above mentioned city ordinance."

Another allegation that the defendant was negligent in failing to look out for pedestrians who would come near the elevator is not relied on by plaintiff and, obviously, charges no duty.

either or both. These allegations are not tied to the ordinance, but are general. But the allegation with respect to the failure to have a steel bar across the elevator is differently phrased and charges only violation of the ordinance.

■ We find no violation of the ordinance. Nothing in it requires a guard of any kind on the side of the opening adjacent to the curb. The only guard required is one "on the side of the sidewalk nearest to the property line," i.e., nearest to the buildings. This guard "shall be made in the form of a grating with openings not exceeding 8 inches in dimension and so arranged that a child cannot get under or through the guard."

The evidence shows that such a guard was in place at the time of the accident.

The ordinance provides that this guard shall not be required "for sidewalk doors having metal gratings which are level with the sidewalk when the sidewalk doors are open and the elevator platform is below the sidewalk level." At the time of the accident, as we have seen, such a grating covered the opening, but it was not required, since the guard above described was in place. The final sentence of the ordinance: "Elevators having these sidewalk gratings shall be provided with a metal bar to hold the sidewalk doors open", apparently refers to the grating "level with the sidewalk" and is, therefore, not applicable, because no such grating was required. In any event, this requirement was met, for the evidence shows that the guard which was in place was equipped with an iron bar which held the doors open.

The sole question for decision, therefore, is whether the evidence is sufficient to support a finding that defendant violated a common law duty to the plaintiff

in failing to cover the opening in the sidewalk with a proper grating.

■ Maintenance of the elevator constituted a special use of the sidewalk by the defendant for his sole benefit. His duty towards members of the public lawfully using the sidewalk is thus set forth in 2 Restatement of Torts 2d, § 350:

> "A possessor of land over which there is a public highway is subject to liability for physical harm caused to travelers thereon by a failure to exercise reasonable care in creating or maintaining in reasonably safe condition any structure or other artificial condition created or maintained in the highway by him or for his sole benefit subsequent to its dedication."

See Annotations, 88 ALR 2d 331, 31 ALR 2d 1334, 70 ALR 1358, 62 ALR 1067. The rule was applied by this court in *Mitchell v. Ausplund,* 150 Or 572, 47 P2d 256, and *Umphlette v. City of Silverton,* 154 Or 156, 59 P2d 244.

The rationale of the rule is thus stated in the Annotation in 70 ALR, supra, at 1365:

> "As an abutting owner in a city is permitted, from necessity, to excavate the ground underneath the sidewalk and make an opening in it to enable him to utilize the space so obtained, and thus qualify, to a degree, the general right of the public to the exclusive use of the sidewalk for passage, the law imposes on such owner, as compensation for his privilege, the duty of safeguarding his opening so as fairly to protect the public in its ordinary use of the street. Consequently, an abutting owner will be liable for injuries sustained by a pedestrian by reason of the abutting owner's negligence in failing to safeguard properly such opening."

■ As lessee, in exclusive possession and control of the elevator, defendant was charged with the same

duty as an abutting owner. See Annotation, 70 ALR, supra, at 1379, IV.

Was the defendant's duty of reasonable care violated?

■ The evidence shows that the horizontal grating was in four sections and that after the accident the southwest section, the one closest to the plaintiff's car, was "tipped down" or "hanging down," and that the defendant stated to the Chief Elevator Inspector of the State of Oregon, who investigated the accident two days after its occurrence, that "the elevator hinge or hinges were either broken or broke." It appears from the context that the statement referred to the hinge or hinges on the grating, and defendant testified that he meant that the hinges were broken either at the time of the accident or before. This testimony is not evidence that the hinges were broken prior to the accident.

There is only fragmentary evidence as to the construction of the grating and no direct evidence of any structural defect. The defendant was asked on cross-examination whether he inspected "the elevator"—probably meaning the grating—before the accident and gave what could be interpreted as a negative answer. There is no evidence as to whether an inspection would have disclosed a defect in the grating had there been one.

The evidence shows that ordinarily the opening was protected on the street side by an iron bar connecting the doors. At the time of the accident, however, the bar was not in place, but was found afterwards lying by the curb.

We are brought, then, to plaintiff's contention that res ipsa loquitur applies.

■ While pedestrians, it may be assumed, would not customarily use the narrow strip of sidewalk between the curb and the elevator, when it was open, it was entirely lawful for them to do so, and it cannot be said that the duty of the defendant to exercise ordinary care did not extend to such pedestrians. The need for measures for their protection is indicated by the maintenance of the grating over the opening when protection was otherwise afforded pedestrians using the sidewalk on the property line side, as well as by the use of the bar connecting the elevator doors on the street side; although, as we have seen, the absence of the bar was not pleaded as an independent ground of negligence.

■ It should be added that, even assuming the existence of a defective condition, the defendant could not be charged with negligence in that regard unless he knew or should have known of it: *Wriglesworth v. Doyle,* 244 Or 468, 471, 417 P2d 999; *Bosler Hotel Co. v. Speed,* 167 Ky 800, 803, 181 SW 645 (a case involving the fall of a person into a sidewalk elevator shaft).

In *Gow v. Multnomah Hotel, Inc.,* 191 Or 45, 224 P2d 552, 228 P2d 791, the plaintiff, a patron of a hotel coffee shop, was injured when a counter stool collapsed as he attempted to rise from it. We held, in a scholarly opinion by Mr. Justice BRAND, that res ipsa loquitur applied; in other words, that the facts constituted circumstantial evidence of the defendant's negligence. We said that the doctrine had never been better stated than in *Scott v. London and St. Katherine Docks Co.,* 3 H & C 596, 159 Eng Rep 665, 667 (1865):

"There must be reasonable evidence of negligence.

"But where the thing is shewn to be under the management of the defendant or his servants, and

the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

All the elements of the doctrine are here present. "The thing," i.e., the grating, as well as the entire elevator, was "under the management of the defendant." It was the defendant who opened the doors of the elevator, thereby pre-empting that portion of the sidewalk to the exclusion of its normal use by pedestrians. And it was defendant who placed the grating over the opening. The obvious purpose of installing the grating was to prevent pedestrians from falling into the opening. No other purpose has been suggested either by the defendant in his testimony or by counsel in argument. It is not unreasonable to conclude, therefore, that the accident was one which in the ordinary course of things would not have happened had reasonable care been used by the defendant.

Counsel for defendant would distinguish the *Gow* case because "the stool on which the injured party sat was expected to be used in that manner. Here a screen was over the shaft and it was not expected that someone would step, jump, or fall on it. The condition was such that it could be observed just as readily by plaintiff as by defendant." The last sentence of the argument we have quoted from defendant's brief appears to be pertinent to a charge of contributory negligence. The defendant's answer contains such a charge and, of course, if it is shown that plaintiff's injury was due to her own fault the doctrine would not apply. But, while the defendant's motion for a directed verdict was based in part upon the ground that plaintiff

was guilty of contributory negligence as a matter of law, no such contention has been made in this court.[2]

It may be conceded that there is a factual difference between this case and the *Gow* case. The stool, of course, was there to be sat upon by patrons of the coffee shop. The grating, it may be said, was not expected to be used at all by a pedestrian; doubtless the defendant hoped that it would never be; but it was placed over the opening to protect pedestrians from injury and with the knowledge that it *might* be used in circumstances which, of course, neither the defendant nor anyone else could foresee. Had there been no elevator shaft or had the elevator doors been closed at the time of the accident to the plaintiff, she could have escaped injury from the open door of her car without the risk of falling into an opening in the sidewalk; but her act in stepping on the grating as a place of safety in the emergency which faced her was the very sort of use which the grating was intended to serve.

In the *Gow* case the court devoted much of the discussion to the inclusion by Dean Wigmore in his formulation of the res ipsa loquitur doctrine the requirement of nonparticipation by the victim, and held that the act of the plaintiff in sitting on the restaurant stool did not constitute such participation nor in any way detract from the defendant's exclusive control of the instrumentality. The plaintiff in that case, it is true, was an invitee of the hotel company, but, in view of the purpose of the grating, this relationship makes for no legal distinction; there was no greater partici-

---

[2] The motion stated that the plaintiff walked backward into the elevator opening without looking and voluntarily assumed a place of danger. Plaintiff testified that she knew the elevator was there, but did not know it was open and that she looked before stepping on the grating.

pation by the plaintiff here than by the plaintiff in the *Gow* case. In both cases the duty of the defendants was identical, namely, to exercise reasonable care.

We therefore conclude that the evidence was sufficient to raise an inference of negligence, permissible, but not mandatory, and to carry the plaintiff's case past a nonsuit: *Gow v. Multnomah Hotel, Inc.*, 191 Or at 53. As the defendant's evidence did no more than make a conflict the court erred in granting the motion for a directed verdict.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.